## BAGLEY *v.* THE STATE.

The general local option liquor law (now embodied in section 1541 et seq. of the Political Code) having been enacted on the 18th day of September, 1885, and never having been repealed, it was not, on the 10th day of December, 1895, within the power of the General Assembly to constitutionally enact a special statute prohibiting and making penal the sale of spirituous or intoxicating liquors within the corporate limits of a designated town or city. An act of this character is contrary to that clause of the constitution (embraced in § 5732 of the Civil Code) which forbids the enactment of a special law in any case for which provision has been made by an existing general law. LITTLE, J., dissenting.

Argued November 1, 1897.— Decided February 28, 1898.

Indictment for selling liquor. Before Judge Littlejohn. Sumter superior court. May term, 1897.

*Jesse W. Walters*, for plaintiff in error.
*F. A. Hooper*, solicitor-general, and *J. E. D. Shipp*, contra.

LUMPKIN, P. J. On the 10th day of December, 1895, the General Assembly passed an act "to prohibit the sale of spirituous, alcoholic, malt, or intoxicating liquors within the incorporate limits of the town of DeSoto in Sumter county, to prescribe a penalty therefor, and for other purposes pertaining thereto. Acts of 1895, p. 213. The only question presented for determination in the present case is whether or not the above-mentioned act is constitutional. In our opinion, it is not, for the reason that it violates that clause of the constitution referred

to in the headnote.　This court, in *Crabb* v. *State*, 88 *Ga.* 584, decided that the local option liquor law, enacted September 18, 1885, and now embraced in section 1541 et seq. of the Political Code, was a general law, and accordingly held that a special statute undertaking to prohibit the sale of intoxicating, malt, or spirituous liquors in the county of Polk was unconstitutional because it was a special law upon the identical subject for which provision had been made by an existing general law.　In *Caldwell* v. *State*, 101 *Ga.* 557, this court held that a special act passed in 1889, undertaking to prohibit and make penal the sale of intoxicating, spirituous or malt liquors in a designated *portion* of a named county, was likewise unconstitutional.　In rendering the decision last mentioned, the court had under consideration an act passed October 3, 1889 (Acts of 1889, p. 1350), which in effect undertook to provide for complete and total prohibition in all parts of the county of Wilkes not embraced within the corporate limits of the town of Washington. It would have resulted from an enforcement of the provisions of that act that no spirituous liquors could be lawfully sold in any of the rural portions of Wilkes county, or in any incorporated city, town or village therein, if such there be, other than the town of Washington.　The act now under review is very similar to that relating to Wilkes county.　The difference between the two certainly affords no substantial ground for holding that the principle upon which the decision in *Caldwell's* case was based is not controlling in the case now in hand.　The purpose of the act relating to Wilkes county was to obtain prohibition for a part only of that county.　The purpose of the DeSoto act was to secure prohibition in a part only of the county of Sumter.　While it is true that the territory affected by the former is much larger than that over which the latter would operate, this fact is clearly immaterial.　Nor can it make any difference, in principle, that the territory in which the sale of liquor was sought to be prohibited was, in one instance, rural, or partly rural and partly urban, and in the other, urban exclusively.

In the *Crabb* case, supra, it was remarked that substantially the same question there dealt with was ruled upon by this

court in the "fence" cases of *Mathis* v. *Jones,* 84 *Ga.* 804, and
*Camp* v. *Tompkins, Id.* 812. Counsel for the defendant in error
insisted, however, that the principle upon which the cases last
mentioned turned was not applicable in a case like the present,
because the local option law relating to the abolition of fences
itself provides for elections upon the question of "fence or no
fence" in territorial divisions constituting portions only of
counties, viz., militia districts and parts of counties divided by
navigable rivers; whereas there is no provision for elections
on the liquor question in cities, towns or villages, or in any
other territorial division whatever less than an entire county.
It was accordingly argued that as there is no general law un-
der which a town can have an election on this question, the
subject of prohibition therein is not provided for by general
legislation of any kind, and could therefore be dealt with by a
special act. This contention, while to some extent plausible,
is not sound. If the General Assembly could by one special
act provide for prohibition in a given part of a county, it could
by another special act provide for prohibition in the remaining
portion of the county, and thus accomplish indirectly what it
could not constitutionally do directly. If such legislation
could be constitutionally enacted at all, the two acts need not
be passed at different times, but could be enacted simultane-
ously, and, operating separately, bring about the remarkable
result of virtually repealing the general law, so far as the
county in question was concerned. If the General Assembly
could pass a prohibition act which could constitutionally oper-
ate in a portion only of a given county, it would be an easy
matter to practically defeat and annul the scheme and purpose
of the liquor option law. For instance, an act could be passed
prohibiting the sale of liquor in every portion of a given
county except a tract one hundred yards square in the north-
east corner thereof. One hundred and thirty-six similar acts,
each relating to a particular county, could be passed, and the
result would be total prohibition, independently of the vote of
the people, all over Georgia except as to the territory embraced
in the one hundred and thirty-seven small squares indicated.
It is obvious that the provisions of the general liquor option

law could not, by such evasive legislation, be set aside and rendered inoperative.

This general law undertakes to deal specifically and at length with the liquor question, and it alone must be looked to in ascertaining to what extent and for what purpose the General Assembly has seen proper to exercise its police powers with reference to this subject. The legislative scheme clearly was to divide the State territorially into one hundred and thirty-seven parts, each county to constitute one of the same, and to provide that, as to each of these parts, the question whether or not liquor should be sold within its territorial limits should be left to a vote of its electors, the will of the majority to govern. By its silence, this law negatives any intention to empower the people to exercise, with regard to this matter, self-government of a more local character. If, after providing for elections by counties, the General Assembly had in express terms declared that no elections upon the question of the sale of liquors should be held in any territorial division of the State other than a county, it is quite certain that an attempt by special legislation to provide for such an election in a city or town would be unconstitutional; and, in view of the decision in *Crabb's* case, it would necessarily follow that a special act flatly declaring that there should be prohibition in a given town or city would be contrary to the constitution. When it is remembered that it was the design of the general liquor statute to declare what *should* be—not what *should not* be—the law governing the particular subject-matter therein dealt with, the conclusion seems irresistible that this statute as it stands has exactly the same meaning as it would have if it included the express declaration above mentioned. It was (and still is) within the power of the General Assembly to provide for a general election in the whole State upon the liquor question, the result thereof to be binding in every part of the State, and upon each and every resident thereof; or, as has been done, to provide for elections upon this question by counties; or, as in the "fence" legislation, to provide for elections by militia districts, or other territorial subdivisions. Having, however, undertaken to deal with the right of the people to assert by popular vote their pref-

erences and desires with reference to the carrying on of the
liquor traffic, and having confined the elections to be held for
this purpose to counties only, it must be assumed that the sub-
ject of elections upon the liquor question has been dealt with
exhaustively, and that the legislation embraced in this general
local option liquor law excludes any interference with its gen-
eral operation by special legislation in any shape or form.
Even had the General Assembly seen proper to provide for
municipal elections upon this . question, it could still, with
equal force, have been urged that as the general law did not
provide for elections to be held in the various wards of a city,
nor in express terms negative the right of the residents thereof
to hold elections therein, it would accordingly be still within
the power of the legislature to provide by special acts for such .
elections, or for prohibition in a particular ward without an
election.    Indeed, if the contention of counsel above stated be
sound, there would be hardly any limit to the divisions and
subdivisions into which the territory of the State could be arbi-
trarily cut up for the purpose of enacting special laws upon the
liquor question.

The act providing for prohibition in DeSoto certainly can
not be regarded as an express amendment to the charter of that
town.    It makes no reference whatever to the charter or to any
of its provisions, but plainly and directly attempts to enact
that there shall be total prohibition in the territory lying with-
in the corporate limits of that town.    But treating the act as
being so far amendatory of the charter as to repeal the pro-
visions thereof conferring upon the mayor and council au-
thority to regulate the liquor traffic therein, including the
power to grant liquor licenses, it would simply result that this
authority, hitherto belonging to the mayor and council, has
been taken away.    The constitutional difficulty of making the
act operative so as to prevent the county authorities from
granting licenses to sell liquors in DeSoto would still remain.
In other words, the constitutional question involved in this
case can not be evaded, nor its determination affected, by en-
deavoring to deal with the act under review as a mere amend-
ment to the town's-charter.

We are also unable to perceive how the constitutional difficulty can be avoided by reason of the fact that this act is one in the nature of a police regulation. It is, indisputably, legislation of this character. But whatever power the General Assembly may have with reference to enacting laws of such a nature, it must exercise that power in obedience to the requirements of the constitution. It could, instead of passing the general liquor option law, have regulated the liquor traffic by special statutes applicable to particular localities. This it in fact did, in instances almost without number, before this general law was passed. When it chose to enact that law, however, and thus put into operation its police powers with reference to the sale of intoxicating liquors, it could no more modify or repeal the provisions of this law by special acts than it could the provisions of any other general law by special legislation. Under the constitution, the General Assembly may provide with reference to any legitimate subject-matter of legislation for a general system applicable thereto. Whenever it does this, the system must operate uniformly throughout the State, and the General Assembly can not, without repealing the general law, indulge in special legislation with reference to this particular subject-matter. In applying the constitutional provision forbidding special legislation in cases where provision has already been made by an existing general law, it can make no difference to what subject the general law relates. Whether it deals with criminal matters, with taxation, with remedies in judicial procedure, with matters pertaining to police regulation, or with anything else whatever, the constitutional mandate applies in every instance. Of course, in passing the general liquor option law, the legislature did not exhaust or relinquish its police powers over the regulation of the liquor traffic. It still retains the power to alter, amend or repeal that law, provided only that it exercises that power in the manner prescribed by the constitution, viz., by general, and not by special, legislation.

It follows from the foregoing, that the act under review was unconstitutional, and that the trial court erred in holding that it could afford the basis of a lawful prosecution.

*Judgment reversed. Fish and Cobb, JJ., concurred. Little, J.,*

*dissented.   Simmons, C. J., was disqualified.   Lewis, J., was not a member of the court when the case was argued.*

LITTLE, J., dissenting.    I do not propose to submit any elaborate argument in giving the reasons which impel me to dissent from the conclusions, as well as the reasoning, which my brethren have adopted in this case.    The reasoning of a majority of the court is based on the proposition that, the local option liquor law (embodied in section 1541 et seq. of the Political Code) being in force, and it being a general law, our constitutional provision, which forbids the enactment of a special law in any case for which provision has been made by an existing general law, makes void an act of the General Assembly which prohibits and makes penal the sale of spirituous or intoxicating liquors within the limits of a designated town or city.    This reasoning, in my judgment, is not sound.    The local option law, of itself, does not prohibit the sale of spirituous or intoxicating liquors; and in a county which has not adopted the provisions of that act it can not be held that there is a general law prohibiting such sales; and if it be true that there is no general law which forbids the sale, it is clearly and undeniably within the power of the General Assembly to prohibit sales of liquors within any given portion of the territory of this State.    It is commonly supposed that the local option law is a measure in behalf of temperance, and is aimed at the prohibition of the traffic in liquors.    To give it the effect which it must have, under the ruling of a majority of the court, in this instance at least, its effect is to authorize the sale where the legislature has forbidden it.

The prohibition or regulation of the liquor traffic is the exercise of the police power of the State, concerning which Judge Cooley, citing from a large number of authorities, declares, "By this general police power of the State, persons and property are subject to all kinds of restraints and burdens, in order to secure the general comfort, health, and prosperity of the State; of the perfect right in the legislature to do which, no question ever was or, upon acknowledged general principles, ever can be made so far as natural persons are concerned." Constitutional Limitations (5th ed.), 708.    And in the case of

Beer Company *v.* Massachusetts, 97 U. S. 25, Mr. Justice Bradley, citing the case of Boyd *v.* Alabama, 94 U. S. 645, says: "Whatever difference of opinion may exist as to the extent and boundaries of the police power, and however difficult it may be to render a satisfactory definition of it, there seems to be no doubt that it does extend to the protection of the lives, health, and prosperity of the citizens, and to the preservation of good order and the public morals. The legislature can not, by any contract, divest itself of the power to provide for these objects. They belong emphatically to that class of objects which demand the application of the maxim *salus populi suprema lex*; and they are to be attained and provided for by such proper means as the legislative discretion may devise. That discretion can no more be bargained away than the power itself." As to the application of this power to the traffic in liquors, Mr. Black in his work on Intoxicating Liquors, § 31, citing a number of authorities, declares the law to be: "That the regulation of the manufacture and sale of intoxicating liquors is a proper subject for the exercise of the police power, is a proposition which has never for a moment been doubted. On all the grounds which are recognized as most safely and surely bringing a matter within the scope of this power, the production and sale of intoxicants is included within the sphere of its legitimate operations." In speaking of the limitations of this power, Tiedeman says the legislature is clearly the department of the government which can and does exercise the police power, and consequently in the limitations upon the legislative power are to be found the limitations of the police power. Tiedeman, Limitations of Police Power, 5. So that it will be admitted that the legislature can, in the exercise of the police power of the State, prohibit the traffic in liquors within the limits of the State or any portion thereof, and this power is only limited by some existing inhibition of the constitution. As above stated, the majority of my brethren find this inhibition to exist in the provision which forbids the enactment of a special law in any case for which provision has been made by an existing general law. A law of this State provides for the issuance of licenses, under stated terms and restrictions, to engage in the sale of intoxicat-

ing liquors. With such a law in force the local option law (which is general in its nature) gave to the people of the various counties of this State the privilege of determining whether such license should be granted or whether sales of liquors should be prohibited in a particular county. This privilege is to be exercised by an election whenever a sufficient number of the people of a county desire. Until this privilege is exercised the local option law is inoperative in a particular county. It has no force or effect to prohibit the sale until adopted at an election held by the people in a county.

In my judgment the reasoning is fallacious which leads to the conclusion that the existence of a law which gives to the people of a county the privilege of saying whether liquor shall be sold in that county, or whether it shall be prohibited, has the effect of taking from the legislature the right to the exercise of the police power in a particular county where such election has not been held, or if held, sales of liquor are not prohibited. That act can not go into effect until its adoption. When it has been duly adopted and put in force, it then, but not until then, constitutes the exclusive system for the regulation of liquor-selling in that locality. 78 Pa. St. 490; 63 Md. 120; 64 Miss. 462; 5 Tex. App. 155. It would not be accurate to say that after the provisions of such a law had been put in force, prior laws, which are inconsistent with its terms, are repealed; but such prior laws authorizing licenses to issue are suspended by the local option law. State v. Smith, 7 So. Rep. 848. And upon the terms of the local option law ceasing to be operative in a particular county, prior laws regulating the issue of licenses are again in force. Butler v. The State, 25 Fla. 327.

The legislature of this State in 1895 passed an act to prohibit the sale of spirituous, alcoholic, malt, or intoxicating liquors within the incorporate limits of the town of DeSoto, in Sumter county. In my judgment the General Assembly had the clear right to pass this act, and its provisions should be put in force. The town of DeSoto is one of the political divisions of this State, created by the General Assembly. While it is located in the county of Sumter, it is not contended that the provisions of the general local option law have ever been

adopted by the people of that county, and at the time of the passage of the act sales of liquors were authorized to be made under licenses in Sumter county. This being true, the power is inherent in the General Assembly to prohibit the sale in the entire county, in any portion of the county, or in any incorporated town or city within the limits of the county. And in deference to these views I am constrained to differ with my brethren in the conclusions which they have reached in the decision of the case.