CITY OF ATLANTA *v.* HUDGINS *et al.*

No. 14016.   FEBRUARY 10, 1942.   REHEARING DENIED MARCH 14, 1942.

622

*J. C. Savage, E. L. Sterne, Frank A. Hooper Jr.,* and *J. C. Murphy,* for plaintiff in error.

*William G. Grant,* for Mrs. Hudgins.

*Spalding, Sibley, Troutman & Brock, E. H. Sheats,* and *W. S. Northcutt,* for Fulton County.

DUCKWORTH, Justice. ■ In 1882 this court, in *Collins* v. *Macon,* 69 *Ga.* 542, held that for failure to perform legislative or judicial acts a municipal corporation is not liable; but that for ministerial acts the rule is different, and that damages may be recovered either from the neglect to perform them, or from performing them in an unskillful, negligent, or improper manner. The rule announced in that case is now codified as section 69-301. The Code, § 3-106, declares that "no demand shall be necessary to the commencement of an action, except in such cases as the law or the contract prescribes." In 1899 (Acts 1899, p. 74; Code, § 69-308), the legislature enacted a law requiring a demand as a prerequisite to suit against a municipal corporation for injury to person or property. Before the enactment of the statute requiring a demand, the liability of every municipal corporation in Georgia, under § 69-301, was unqualified and unconditional. By the enactment of the law requiring a demand this unqualified liability of each municipal corporation became conditional upon the demand required by the statute. The demand statute thus conferred a degree of immunity upon every municipal corporation in the State; for it provides that no suit for money damages on account of injuries to person or property shall be brought at law or equity against the municipal corporation without first presenting in writing such claim to the municipality for adjustment, the written claim stating the time, place, and extent of such injury, as nearly as practicable, and the negligence which caused the same. At the time of the enactment of the special law amending the charter of the City of Atlanta here involved, this general statute limiting the liability of municipal corporations in Georgia was the only limitation upon that liability. Every municipal corporation throughout the State enjoyed this limitation, so far as the general law was concerned. By the charter amendment (Ga. L. 1939, p. 834), the City of Atlanta is given a degree of immunity not enjoyed by any other municipal corporation within the State. That amendment, notwithstanding the general law requiring a written demand as a pre-

requisite to suit, provides that the City of Atlanta shall, despite full compliance with the general law, remain immune from suit unless the requirements of the special law are met by making a written claim or demand differing in substance from that required by the general law, and serving the same upon the city authorities within ninety days from the date of injury. The present action challenges the validity of this charter amendment, upon the ground that it offends article 1, section 4, paragraph 1, of the constitution (Code, § 2-401).

The language of this paragraph of the constitution is clear and unambiguous, and its purpose is obvious. It in part declares that "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law." Territorial uniformity is definitely required, and the subject-matter of an existing general law is put beyond the reach of special laws. The broad objective of this paragraph of the constitution was manifestly to prevent the confusion and uncertainty that would necessarily result if there existed at the same time a general law and a special law dealing with or regulating the same subject-matter. It was intended to insure that once the legislature entered a field by enacting a general law, that field must thereafter be reserved exclusively to general legislation and could not be open to special or local laws. The terms of the constitution do not limit this rule to those fields and subjects which have been completely exhausted by a general law. It embraces every field and subject which has been covered, though superficially, by a general law. If such a law is not exhaustive and fails to reach every minute element of the subject dealt with, the remedy, and the only constitutional remedy for a more exhaustive legislative treatment, is by amendment of the general law by a general enactment. It can not be done by amending or supplementing the general law by a special law. This provision of the constitution would be nullified if by play upon words and definitions the courts should hold valid a special law when there existed at the time of its enactment a general law covering the same subject-matter. The mere fact that the special law deals with some remote segment or element of the general subject embraced in the general law, which segment or element is not dealt with by the general law, does not alter the fact that such a special law is enacted

in a case where provision has been made by an existing general law. The General Assembly in the exercise of its judgment might wish that portions of the subject dealt with by the general statute should remain free from regulation by law. In the present case the general statute as to demand or notice fixes no specific time limit for making the demand, but merely makes the demand a prerequisite to suit, leaving the injured party free to make the required demand at such time as he may wish, limited only by the limitation statutes fixing the times within which his suit must be brought. By failing to limit the time of making the demand the legislature clearly indicated that it was not desired to carry the immunity of a municipal corporation beyond the limits fixed by that law. It would be difficult to find a general statute that expressly treats every conceivable element of the subject-matter of the law, but instead of leaving the untreated elements as a field in which special legislation can be constitutionally enacted the legislature has simply indicated its choice for the time being not to expand the general law. If subsequently to the enactment of such a law it is ever desired to expand the law on the subject dealt with, this can and must be done by amendment of the general law, rather than by a special law.

Counsel for the city seek to sustain the special law amending the charter, by the rulings in the following cases: *Paulk* v. *Sycamore,* 104 *Ga.* 728 (31 S. E. 200) ; *Papworth* v. *Fitzgerald,* 106 *Ga.* 378 (32 S. E. 363) ; *Hancock* v. *State,* 114 *Ga.* 439 (40 S. E. 317) ; *Trammell* v. *Rome,* 142 *Ga.* 602 (83 S. E. 221) ; *Sheppard* v. *Edison,* 161 *Ga.* 907 (6) (132 S. E. 218) ; *Head* v. *Wilkinson,* 186 *Ga.* 739 (198 S. E. 782) ; *Steele* v. *Waycross,* 187 *Ga.* 382 (200 S. E. 704) ; *Upson* v. *Almand,* 190 *Ga.* 376 (9 S. E. 2d, 662). It would require time and space out of proportion to the importance of the bearing of the cases cited upon the question involved, to enter upon a minute analysis and explanation of the cases relied upon; but we think in view of the general confusion on the question involved a brief analysis of those cases is justified. In *Paulk* v. *Sycamore,* supra, this court expressly stated that it was unnecessary there to determine what was the general law on the subject involved. It was pointed out that certain special laws had been held in *Papworth* v. *State,* 103 *Ga.* 36 (31 S. E. 402), and *Bagley* v. *State,* 103 *Ga.* 388 (29 S. E. 123, 32 S. E. 414), to offend the paragraph of the constitution here invoked. The case there made

was a charge against a person for possessing liquor for the purpose of sale without a municipal license, in violation of a municipal ordinance. The opinion holds, on authority of the decisions in *Mayson* v. *Atlanta,* 77 *Ga.* 662, and *Bagwell* v. *Lawrenceville,* 94 *Ga.* 654 (21 S. E. 903), that a municipality in a county where the sale of liquor is entirely prohibited has the authority, in the exercise of the powers conferred by charter, "to protect the health, property, and persons of the citizens of the town, and to preserve peace and good order therein," to pass an ordinance not contrary to the constitution and laws of the State and to impose reasonable penalties for its violation. The defendant there admitted that he possessed liquor for the purpose of sale, and that he had no license as required by the ordinance; and this court simply held that his conviction was authorized. *Papworth* v. *Fitzgerald,* supra, stands upon the same basis, and has no application in the present case.

In *Hancock* v. *State,* supra, the existing general law declared that "any person who shall manufacture or cause to be manufactured" domestic wines may lawfully sell the same "in quantities not less than one quart." The special act there under attack prohibited the sale of such wine by the drink in named places. This court held that the special law permitted everything permitted by the general law, and that the things prohibited by the special law were not covered by the general law; and it was stated that the ruling in *Papworth* v. *State,* supra, where a special law was held invalid because the general law existing covered the same subject-matter, was inapplicable. The opinion was concurred in by only five Justices.

In *Trammell* v. *Rome,* supra, the decision was planted upon the stated conviction of the court that the general law there involved dealt solely with the subject of raising revenue, and that the special law dealt only with the subject of police regulation. Whether or not these reasons for sustaining the special law were sound, it was there recognized that a special law to be valid must deal with a subject not covered by the general law.

In *Sheppard* v. *Edison,* supra, it is asserted that the special law there under attack provided a method and procedure for the municipality to pursue in condemning property, which was in all material respects identical in substance with the existing general law prescribing the method and procedure to be followed by all municipal-

ities in condemning property; and, without citation of any authority, it was ruled that because the two statutes are identical the special law does not offend article 1, section 4, paragraph 1, of the constitution. While two of the Justices dissented in that case, the dissent was from other rulings, and not the one on the constitutionality of the special statute. The ruling that because the substance of the special law was the same as the general law, the special law was not rendered void under the constitution, was perhaps based upon language in *Mathis* v. *Jones,* 84 *Ga.* 804, 809 (11 S. E. 1018), where it was said: "If at any given time there is upon the statute book, taken as a whole, a general statute which provides for the case in hand, any local statute providing for it would necessarily contain the same or different provisions; if the same, it would be superfluous; and if different, it could have no effect." Clearly the quoted language does not mean and was not intended to mean that if the two statutes are the same the local law will not fall under the constitution. "Superfluous" means useless, unnecessary, and ineffectual. The very language of the constitution is that no special law shall be enacted *"in any case for which provision has been made by an existing general law."* It must be observed that the constitution does not require that the special law differ from the general law, but expressly declares that if provision has been made by general law no special law shall be enacted. Therefore to state the very grounds upon which the above ruling was made is to state a case where the constitution prohibits the special law.

In *Head* v. *Wilkinson,* supra, this court simply held that section 22 of the act there under consideration was a part of the act; and that since the act was a general one, section 22 was not a special law, and that said section did not offend the constitutional provision here involved. In *Steele* v. *Waycross,* supra, the decision was based upon the construction of the special statute as covering a field not dealt with by general law, in that the general law provided for interest only upon executions, while the special law provided that the assessment should draw interest prior to the issuance of an execution. Nothing ruled in *Upson* v. *Almand,* supra, sustains the contention of the plaintiff in error.

Before the adoption of the constitution of 1877, containing the provision here invoked, this court, in *Adams* v. *Albany,* 29 *Ga.* 56, held that a city ordinance making it penal to sell spirits to be drunk

on the premises where sold was void for the reason that it was inconsistent with the State law on the same subject. In the opinion it was said: "It is not a case where State law is silent. The State has spoken. The result is a clear declaration by State law, that the liquor may be sold to be drunk anywhere. The city speaks, and says that it shall not be sold to be drunk on the premises. The one says it may, the other says it shall not. The two can not stand together, and that is the test of inconsistency." In *Turner* v. *Forsyth,* 78 *Ga.* 683 (3 S. E. 649), the general law prohibited the sale of liquor except by physicians. The city ordinance required under penalty that physicians make reports of all sales. The physicians challenged the validity of the ordinance; and this court held it void. In *Watson* v. *Thomson,* 116 *Ga.* 546 (42 S. E. 747, 59 L. R. A. 602, 14 Am. St. R. 137), it was held that a municipal corporation could not under the general welfare clause of its charter adopt an ordinance prohibiting the carrying on of ordinary callings on Christmas day. The ordinance was held void, because the State had by general law dealt with the subject of holidays; and since the State had not seen fit to legislate on this branch of the subject of holidays, it was the implied public policy of the State to allow the thing prohibited by the ordinance. In *Stewart* v. *Anderson,* 140 *Ga.* 31 (78 S. E. 457), it was said: "A general law may be repealed or modified by another general law, but it can not be repealed or modified by a special or local law." In *Futrell* v. *George,* 135 *Ga.* 265 (69 S. E. 182), it was held that it was competent for the legislature to bring about a stated result by the passage of a general law, and it was said: "It was not permissible to accomplish this result by a special law which would have the effect of arresting the uniform operation throughout the State of the existing general law."

Whatever may have been the decisions of this court upon the subject now considered, there is announced in *Mathis* v. *Jones,* 84 *Ga.* 804, supra, a clear interpretation of the clause of the constitution involved. While in that case the invalidity of the special statute was very apparent, the decision by this court on the question of its invalidity authorized and required a construction by this court of the constitutional clause there invoked. That decision was concurred in by all the members of the court, and has never been criticized, but on the contrary has been cited with approval in the following long list of cases: *Camp* v. *Tompkins,* 84

*Ga.* 812 (11 S. E. 1021); *Crabb* v. *State,* 88 *Ga.* 584 (15 S. E. 455); *Mattox* v. *Knox,* 96 *Ga.* 403 (23 S. E. 307); *Crovatt* v. *Mason,* 101 *Ga.* 246 (28 S. E. 891); *Sasser* v. *Martin,* 101 *Ga.* 447 (29 S. E. 278); *Bagley* v. *State,* supra; *Thomas* v. *Austin,* 103 *Ga.* 701 (30 S. E. 627); *Union Savings Bank* v. *Dottenheim,* 107 *Ga.* 606 (34 S. E. 217); *Kennedy* v. *Meara,* 127 *Ga.* 68 (56 S. E. 243, 9 Ann. Cas. 936); *Futrell* v. *George,* supra; *Clark* v. *Reynolds,* 136 *Ga.* 817 (72 S. E. 254); *Morrison* v. *Cook,* 146 *Ga.* 570 (91 S. E. 671); *Wright* v. *Hardwick,* 152 *Ga.* 302 (109 S. E. 903); *Downs* v. *State,* 158 *Ga.* 669 (124 S. E. 166); *Shore* v. *Banks County,* 162 *Ga.* 185 (132 S. E. 753); *Wheat* v. *Bainbridge,* 168 *Ga.* 479 (148 S. E. 332); *Marbut* v. *Hollingshead,* 172 *Ga.* 531 (158 S. E. 28); *Toole* v. *Anderson,* 177 *Ga.* 814 (171 S. E. 714); *Freeney* v. *Pape,* 185 *Ga.* 1 (194 S. E. 515); *Parrish* v. *Savannah,* 185 *Ga.* 828 (196 S. E. 721); *Mayes* v. *Daniel,* 186 *Ga.* 345 (198 S. E. 535); *Hoover* v. *Brown,* 186 *Ga.* 519 (198 S. E. 231); *Lloyds America* v. *Brown,* 187 *Ga.* 240 (200 S. E. 292); *Rourke* v. *United States Fidelity & Guaranty Co.,* 187 *Ga.* 636 (1 S. E. 2d, 728). The opinion in that case was prepared for the court by Chief Justice Bleckley. In *Maddox* v. *Knox,* supra, the opinion was prepared by Chief Justice Simmons, and in speaking of the special act there under consideration it was said: "The provisions of the act are entirely inconsistent with the general law. The act provides new instrumentalities for carrying into effect the general legislative scheme for working the roads, and these instrumentalities make Chattooga an exception to the general law. For a discussion of the clause of the constitution now under consideration, see the able opinion of Bleckley, C. J., in *Mathis* v. *Jones,* 84 *Ga.* 804."

There can be no doubt that the interpretation of this clause of the constitution announced in *Mathis* v. *Jones* has been the law since that opinion was rendered. Any subsequent decision by this court that may be in conflict with the rulings there made is to the extent of such a conflict not binding. In that opinion it was said: "A law territorially general, and a subsequent law territorially special, for the same order of cases, are mutually exclusive of each other. The legislature may have either, but in the nature of things can not have both." This language simply means that a special law dealing with the subject that has already been dealt with by

an existing general law can not stand under the constitution. It was also stated in that opinion: "You can not make a general statute cease to be general otherwise than by another general statute repealing it. That is, under the constitution of 1877, you can not repeal a general law in part by a local law; for in the eye of the constitution, every local law is special relatively to a general law. They [general statutes] can be killed but not mutilated; the smallest of their territorial members can not be cut off." The simple meaning of the quoted ruling is, that as applied in the present case, since the existing general law has fixed as to every municipality in this State one and only one prerequisite to suit, the enactment of a special law relating to one municipality, and adding further prerequisites to a suit against that municipality, confers upon that municipality a greater degree of immunity than is enjoyed by the other municipal corporations throughout the State, and the uniformity of the general law is thereby arrested. At another point in that opinion it is said: "All special or local laws must find material upon which to operate outside of the scope of general laws. They can withdraw nothing from the domain of general laws which lie within their purview; for to do this would destroy their uniform operation as general laws for the State at large."

It can not be reasonably asserted that the matter of time in which the demand required by the general statute shall be given does not lie within the purview of that general law; and when the special law here assailed fixes a definite time in which such demand must be made upon the City of Atlanta, it thereby withdraws from the domain of the general law something which lies within the purview of that law. That opinion further states: "Touching anything whatever of a local nature there may be a local law, provided no existing general statute applies to it; *but the same thing can not be regulated one way by a general statute, and another way by a subsequent local statute. To allow this would be to allow a local statute to limit a prior general one—that is, to repeal it pro tanto, which, under the present constitution, can not be done.*" (Italics ours.) The special law here involved has as its subject-matter a written demand or claim as a prerequisite to suit against the City of Atlanta for injuries to person or property, and it requires that this demand or claim be served within ninety days from the date of injury. Its content, in addition to the con-

tent prescribed for the notice or demand required by the general statute, provides that the claim must show the amount and the names and addresses of the witnesses. The general statute has for its subject-matter written notice of claim or demand as a prerequisite to suit against a municipality for injuries to person or property. It specifies no time in which the demand must be given. Without a more detailed comparison it is obvious that the subject-matter of the two laws is the same, and that the special law seeks to take from the purview of the general law the matter of fixing the time in which the notice or demand must be given. The special law thus attempts to regulate the giving of this notice or demand one way, while it is by the general law regulated another, and under the ruling in *Mathis* v. *Jones* this can not be done; and such a special law violates article 1, section 4, paragraph 1, of the State constitution (Code, § 2-401).

The city relies strongly upon the decison in *Parrish* v. *Savannah,* 185 *Ga.* 828 (supra). That decision held valid a special law amending the charter of the City of Savannah in substantially the same respect as the charter of the City of Atlanta was amended by the special law here involved. The same constitutional attack as is here made was made in that case. That decision, being concurred in by only four Justices, two Justices dissenting, is not binding authority; and hence this court may refuse to follow it if it is thought unsound. A careful examination of that opinion discloses that it was planted mainly upon two considerations: (a) that under the constitutional provision there must be a conflict between the existing general law and the special law, in order to render the latter repugnant to the constitution; and (b) that the matter of time in which the notice required must be given was a separate field or subject-matter from that of the notice itself, and therefore that since the general statute did not expressly deal with time and the special law dealt only with time, the subject-matter of the special law was not covered by the general law. Under the constitution as interpreted by the controlling decision of this court, while the special law may not conflict with the general law in the sense that it has the effect of repealing some portion of the general law, nevertheless if the special law modifies it in any manner, either by expanding or contracting its meaning, such special law is obnoxious to the constitution and can not be

sustained. As applied in that case, although the general statute fixed no specific time from the date of the injury within which the notice required must be given, and thus the provision of the special law fixing the time limit of six months did not constitute a conflict with express provisions of the general law, it nevertheless altered the meaning of that law by contracting or reducing the time in which the injured party would be allowed to give such notice. It thereby changed the meaning of the general law, and amounts to a conflict therewith. The time for giving the notice is a mere segment or element of the general subject, and the two are inseparable. For the reasons stated we think the decision in that case is unsound, and the same is disapproved and overruled.

■ That portion of the amended petition seeking damages because of alleged interference by defendants' negligence with the underground flow of water to the four wells does not show any cause of action. Code, § 105-1408; *Stoner* v. *Patten*, 132 *Ga.* 178 (2) (63 S. E. 897). There is nothing in the amended petition to show that these wells were supplied by any defined underground stream; and hence this portion of the petition is not sustained by the rule announced in *Saddler* v. *Lee*, 66 *Ga.* 45 (42 Am. R. 62), and *Saint Amand* v. *Lehman*, 120 *Ga.* 253 (47 S. E. 949). It is declared in the Code, § 105-1407: "The owner of land through which nonnavigable watercourses may flow is entitled to have the water in such streams come to his land in its natural and usual flow, subject only to such detention or diminution as may be caused by a reasonable use of it by other riparian proprietors; and the diverting of the stream, wholly or in part, from the same, or the obstructing thereof so as to impede its course or cause it to overflow or injure his land, or any right appurtenant thereto, or the pollution thereof so as to lessen its value to him, shall be a trespass upon his property." The allegations relating to the branch or surface stream do not bring that portion of the amended petition under the rule stated in the quoted Code section, for the reason that although it is alleged that the water in the branch previously flowing over petitioner's land has ceased to flow since the trunk sewer was constructed, and that this is due to the negligence and fault of the defendants, yet it is expressly averred that "in blasting, excavating, and constructing said trunk sewer, defendants *in some manner unknown to petitioner diverted the water which normally and natur-*

*ally flowed from said springs, thereby completely drying up the branch or stream which flowed through petitioner's property."* (Italics ours.) This allegation showing that petitioner does not know how the water was diverted is construed to mean that the diversion took place beneath the surface and was a diversion of underground water which was not in a well-defined stream, for the reason that if surface-water was diverted petitioner would know the manner of such diversion and could so allege. Hence this portion of the amended petition stands on the same basis as the allegations relating to the wells, and is controlled by the above rule applicable to those allegations, and, in the absence of appropriate amendment showing that the diversion referred to was made of the surface stream, shows no trespass and constitutes no cause of action. However, the allegations with reference to damage to petitioner's land adjacent to the right of way and to her fence are sufficient to state a cause of action. The amended petition was not subject to any of the grounds of general demurrer.

*Judgment affirmed. All the Justices concur.*