### R. Elliott CAUDELL, Plaintiff,

v.

### CITY OF TOCCOA, Defendant.

### No. 2:01–CV–105–WCO.

United States District Court, N.D. Georgia, Gainesville Division.

July 26, 2001.

1372

Michael J. Bowers, Joseph Matthew Maguire, Jr., Meadows Ichter & Trigg, Atlanta, GA, for R. Elliott Caudell, plaintiff.

John A. Dickerson, McClure Ramsay Dickerson & Escoe, Toccoa, GA, for City of Toccoa, defendant.

### ORDER

O'KELLEY, Senior District Judge.

The instant case is presently before the court for consideration of plaintiff's verified petition for declaratory judgment and injunctive relief [1–1] and his motion for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure [2–1]. *See* Fed.R.Civ.P. 65. Plaintiff contests the validity, under state and federal law, of Act No. 163 of the 2001 Session of the Georgia General Assembly. *See* 2001 Ga.Laws 163. Act No. 163 amended the municipal charter of the City of Toccoa, Georgia to prohibit "[a]ny member of the city commission elected for a term of office which commences on or after January 1, 2002 ... [from] serv[ing] simultaneously as a member of the board of any hospital authority." 2001 Ga.Laws 163.

### Procedural History

Plaintiff commenced the instant action on June 14, 2001, requesting declaratory and injunctive relief against the enforcement of Act No. 163 by defendant on grounds that the Act violates (A) Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c (2001); (B) the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article I of the Georgia Constitution, *see* U.S. Const. amend. XIV, § 1; Ga. Const. art. I, § 1, para. 2; (C) the right to freedom of association under the First Amendment to the United States Constitution and Article I of the Georgia Constitution, *see* U.S. Const. amend. I; Ga. Const. art. I, § 1, para. 9; (D) the Bill of Attainder Clause of the United States Constitution and the Georgia Constitution, *see* U.S. Const. art. I, § 10, cl. 1; Ga. Const. art. I, § 1, para. 10; and (E) provisions of the Georgia Constitution and Georgia Code prohibiting local or special legislation on matters previously addressed through general legislation. *See* Ga. Const. art. III, § 6, para. 4(a); O .C.G.A. § 36–35–7; § 36–35–3 (2001). Plaintiff articulated his constitutional claims under 42 U.S.C. § 1983, which provides for a federal civil remedy against any "person" who, acting under color of state law, deprives another person of their constitutional rights. *See* 42 U.S.C. § 1983 (2001).

On the same day he filed his verified petition, plaintiff filed an accompanying motion for a preliminary injunction [2–1] and, as required under Georgia law, plaintiff notified the Attorney General of the State of Georgia of his constitutional attack on Act No. 163 [Ex. 10]. *See* O.C.G.A. § 9–4–7(c) (2001). Pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure, this court accelerated resolution of plaintiff's motion for a preliminary injunction, setting the matter for an evidentiary hearing on July 12, 2001[3–1]. *See* Fed.R.Civ.P. 65(a)(2). At said hear-

ing, both parties agreed that a jury trial was unwarranted. This court thus consolidated resolution of plaintiff's motion for a preliminary injunction with a trial of the action on the merits on July 12, 2001, pursuant to Rule 65(a)(2). *See* Fed. R.Civ.P. 65(a)(2). Before this court on July 12, 2001, defendant did not contest any of plaintiff's substantive factual allegations. The following factual background is therefore undisputed.[1]

### Factual Background

In March of 2001, the Georgia legislature approved Act No. 162 and Act No. 163, *see* 2001 Ga.Laws 162; 2001 Ga.Laws 163, which Georgia Governor Roy E. Barnes signed into law on April 16, 2001 [Pl .'s Pet.Decl.J. & Inj.Relief.Ex. 2 at 2; Ex. 3 at 2]. Act No. 163 amended Section 3 of Toccoa, Georgia's municipal charter, changing the eligibility requirements for serving on the Toccoa City Commission ("City Commission") [Pl.'s Pet.Ex. 3 at 3]. Act No. 162 made virtually identical changes to the qualifications for service on the Board of Commissioners of Stephens County, the county in which Toccoa is located [Pl.'s Pet.Ex. 2 at 3]. Specifically, Act No. 163 provided that "[a]ny member of the city commission elected for a term of office which commences on or after January 1, 2002 shall not be authorized to serve simultaneously as a member of the board of any hospital authority." 2001 Ga.Laws 163. Prior to the enactment of Act No. 163, Toccoa's charter conditioned candidacy for the City Commission on the satisfaction of only one requirement: "[e]ach commissioner shall have been a citizen of the City of Toccoa for at least one year next preceding his election and qualification" [Pl.'s Pet.Ex. 1 at 3 (Toccoa, Ga., Charter § 2) ].

Plaintiff, a lifetime resident of Stephens County, has served continuously on the Stephens County Hospital Authority ("Hospital Authority") since 1978, and on the City Commission since March of 2000 [Pl.'s Pet. at 3–4]. Further, plaintiff intends to seek re-election to his position on the City Commission, a term that would begin on January 1, 2001 [Pl.'s Pet. at 4–5]. To be eligible to run in the November 2002 election, plaintiff must qualify by September 14, 2001 [Pl.'s Pet. at 5].

Despite having served simultaneously on the Hospital Authority and the City Commission for the past sixteen months, Act No. 163 forces plaintiff to resign from the Hospital Authority in order to run for re-election to the City Commission, or to forego such re-election in order to remain on the Hospital Authority. Plaintiff is the only person in the entire State of Georgia so affected by Act No. 163; in fact, he is the only person to hold both offices simultaneously in Stephens County in nearly a quarter of a century [Pl.'s Pet. at 5]. Moreover, concurrent service on both the Hospital Authority and the City Commission does not give rise to conflicts of interest, because the City of Toccoa and the hospital do not engage in joint business activities other than the provision of water and sewer services to the hospital.[2] Lastly, plaintiff did not engage in any illegal or unethical activities warranting the enactment of Act No. 163.[3]

---

1. In its response to plaintiff's verified petition defendant asserted that the City of Toccoa "never gave prior approval of the introduction of Act No. 163" and "is not in the position to offer a defense as to the validity or the constitutionality of Act No. 163" [4–1]. Likewise, at the July 12, 2001 evidentiary hearing defendant made it clear that the City of Toccoa "has no dog in this fight."

2. At the July 12, 2001 evidentiary hearing, defendant did not contest the truth of this assertion made by both plaintiff and Donald G. Foster ("Foster").

3. At the July 12, 2001 evidentiary hearing, defendant did not contest the truth of this assertion made by plaintiff, Foster, and Toc-

## Events Surrounding the Enactment of Act No. 163

The following facts pertaining to the introduction and passage of Act No. 163 are likewise undisputed: Representative Jeannette Jamieson of the 22nd District of the Georgia House of Representatives, which includes Stephens County, has been personally acquainted with plaintiff for forty years.[4] During the 2001 session, Jamieson introduced an earlier, state-wide version of Act No. 163 to the Georgia legislature [Pl.'s Pet. at 5]. The measure received little support, so Jamieson introduced Act No. 162 and Act No. 163, which essentially confined the earlier legislation to the City of Toccoa and Stephens County [Pl.'s Pet. at 5]. Prior to doing so, however, Jamieson did not notify the City Commission of her intention as required under Georgia law [Pl.'s Pet. at 5]. See O .C.G.A. § 28-1-14(b).[5] Jamieson also departed from the traditional practice of consulting with the City Commission before introducing local legislation to the General Assembly,[6] and from her own practice of requiring both a written letter from the City Commission and a legal opinion before introducing any such legislation.[7] Further, Jamieson appears to have ignored requests from the City Commission to review and approve such legislation prior to its introduction to the legislature [Ex. 3; Ex. 4], and neither Jamieson nor any other member of the Georgia legislature submitted Act No. 163 for prior approval from the Attorney General of the United States pursuant to the Voting Rights Act of 1965, 42 U .S.C. § 1973c (2001) [Ex. 9].

## I. Preliminary Matters

### A. Notice to the State Attorney General

Under Georgia law, where "a statute of the state, any order or regulation of any administrative body of the state ... is alleged to be unconstitutional, the Attorney General of the state shall be served with a copy of the proceeding and shall be entitled to be heard." O.C.G.A. § 9-4-7(c) (2001). Having attacked the constitutionality of Act No. 163 under state and federal law, plaintiff properly notified Georgia Attorney General Thurbert E. Baker of the instant proceedings, and provided copies of the relevant pleadings on June 20, 2001 [Ex. 10] and June 27, 2001 [Ex. 11]. Despite such notification, the Attorney General has not participated in these proceedings in any way, nor has he in any way defended the validity of Act No. 163.

coa City Commissioner James A. Neal ("Commissioner Neal").

4. At the July 12, 2001 evidentiary hearing, defendant did not contest the truth of this assertion made by plaintiff.

5. O.C.G.A. § 28-1-14(b) requires, in relevant part:

No local bill amending the charter of a municipality or the enabling Act of the governing authority of a county or a consolidated government shall become law unless a copy of the notice of the intention to introduce local legislation required by subsection (a) of this Code section is mailed, transmitted by facsimile, or otherwise provided to the governing authority of any county, municipality, or consolidated gov-

ernment referred to in the bill during the calendar week in which such notice is published as provided in subsection (a) of this Code section or during the seven days immediately following the date of publication of such notice.

O.C.G.A. § 28-1-14(b)(1) (2001).

6. At the July 12, 2001 evidentiary hearing, defendant did not contest the truth of this assertion made by Toccoa City Manager William C. Lewis ("City Manager Lewis") and Commissioner Neal.

7. At the July 12, 2001 evidentiary hearing, defendant did not contest the truth of this assertion made by Judge Alton M. Adams, State Court of Stephens County ("Judge Adams").

## B. 42 U.S.C. § 1983

To articulate a cognizable claim under 42 U.S.C. § 1983, "plaintiff must show that a person, acting under color of any statute, ordinance, regulation, custom, or usage, deprived him of a right, privilege, or immunity secured by the Constitution." *Nat'l Abortion Fed'n v. Metro. Atlanta Rapid Transit Auth.*, 112 F.Supp.2d 1320, 1328 (N.D.Ga.2000). Plaintiff's § 1983 claims are rooted in alleged violations, by defendant City of Toccoa, of plaintiff's rights under the Equal Protection Clause, the First Amendment, and the Bill of Attainder Clause of the United States Constitution [1–1]. *See* U.S. Const. amend. XIV, § 1; U.S. Const. amend. I; U.S. Const. art. I, § 10, cl. 1. These violations stem from defendant's enforcement of Act No. 163, thus defendant may fairly be characterized as "acting under color" of state law. 42 U.S.C. § 1983 (2001). Further, it is well established that municipalities and other bodies of local government are "persons" subject to suit under § 1983. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 121, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

## II. Analysis of Plaintiff's Claims

### A. Alleged Violation of the Voting Rights Act of 1965

Pursuant to § 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c (2001), a state or political subdivision cannot implement any new "voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964" without first obtaining preclearance for the change from the Attorney General of the United States or the United States District Court for the District of Columbia 42 U.S.C. § 1973c (2001). The federal regulations accompanying § 1973c provide that "[a]ny change affecting the eligibility of persons to become or remain candidates, to obtain a position on the ballot in primary or general elections, or to become or remain holders of elective offices," constitutes a "change" requiring preclearance under § 1973. 28 C.F.R. § 51.13(g) (2001). Without such preclearance, the change at issue is invalid and unenforceable. *See* 42 U.S.C. § 1973c (2001).

Act No. 163 falls squarely within § 1973c, for it is certainly a change affecting the eligibility of plaintiff and others to become or remain candidates for election to the City Commission. Because the Georgia legislature failed to obtain preclearance for Act No. 163 from the United States Attorney General or the United States District Court for the District of Columbia, Act No. 163 is invalid under § 1973c and defendant cannot enforce it.

### B. Alleged Violation of the Equal Protection Clause

Although the States have broad power to define the qualifications of voters and political candidates and to establish election procedures, "this power must be exercised in a manner consistent with the Equal Protection Clause of the Fourteenth Amendment," *Bullock v. Carter*, 405 U.S. 134, 141, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972), which prohibits any state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Supreme Court has opined that the right to seek and hold public office is not a fundamental right protected by the Constitution. *See Bullock*, 405 U.S. at 142–43, 92 S.Ct. 849. Further, plaintiff is not a member of any "suspect" class entitled to heightened constitutional protection. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Therefore, even if plaintiff constitutes a "class of one," as he contends he

does [1–1], this court must review the legislation at issue under the Supreme Court's rational basis standard. *See Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). Act No. 163 must thus be presumed valid if the classification it draws is rationally related to a legitimate state purpose. *See Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981).

■ Because plaintiff is the only person in the entire State of Georgia affected by Act No. 163, it is fair to infer that plaintiff has been singled out for a special burden to which others have not been subjected. No other person in Stephens County has served simultaneously on the Hospital Authority and a city commission in nearly twenty-five years, and no other person has publicly expressed an interest in doing so in the foreseeable future. Curiously, residents of the other two municipalities in Stephens County remain free to serve simultaneously on their respective city commissions and the Hospital Authority. Yet, Act No. 163 will force plaintiff to resign from serving on one entity or the other by September of 2001.

Because plaintiff has been singled out by the Georgia General Assembly, and defendant has offered no legitimate state purpose whatsoever to justify this legislative classification, Act No. 163 violates plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment. Moreover, Act No. 163 also violates the Equal Protection Clause of Article I of the Georgia Constitution. *Grissom v. Gleason,* 262 Ga. 374, 376, 418 S.E.2d 27 (1992) (stating that "the protection of the equal protection clause in the 1983 Georgia Constitution and the United States Constitution is coextensive."). If the voters of Toccoa prefer not to be represented by individuals who also serve as members of the Hospital Authority, they may express this preference at the ballot box.

## C. Alleged Violation of the First Amendment

■■ The First Amendment protects, *inter alia,* "the right of the people peaceably to assemble...." U.S. Const. amend. I. Under the Assembly Clause, "it is immaterial whether the beliefs sought to be advanced by [free] association pertain to political, economic, religious or cultural matters...." *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson,* 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Nevertheless, where state election laws are at issue, the Supreme Court has declared that "[r]egulations imposing severe burdens on plaintiffs' [free association] rights must be narrowly tailored and advance a compelling state interest." *Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 359, 117 S.Ct. 1364, 137 L.Ed.2d 589 (1997). Where restraints on free association are less severe, "a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Id.* (quoting *Burdick v. Takushi,* 504 U.S. 428, 434, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992)).

By enacting Act No. 163, Georgia has excluded not only a particular class of persons, but a specific person, from running for a position on the City Commission on the basis of his affiliation with the Hospital Authority. Even under the less exacting standard of First Amendment scrutiny, Act No. 163 fails because defendant has advanced no state interest justifying the burden it imposes on plaintiff's rights. Act No. 163 thus violates both the First Amendment to the United States Constitution, and Article I of the Georgia Constitution. *See Land v. State,* 262 Ga. 898, 901, 426 S.E.2d 370 (1993) (opining that a regulation or condition burdening free association rights will not survive constitutional scrutiny unless it is rationally related to a government purpose).

## D. Alleged Violation of the Bill of Attainder Clause

■ Article I of the United States Constitution provides, in relevant part, that "[n]o State shall ... pass any Bill of Attainder...." U.S. Const. art. I, § 10, cl. 1. Through this clause, "the draftsmen of the Constitution sought to prohibit the ancient practice of the Parliament in England of punishing without trial 'specifically designated persons or groups.'" *Selective Serv. Sys. v. Minn. Pub. Interest Research Group*, 468 U.S. 841, 847, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984) (quoting *United States v. Brown*, 381 U.S. 437, 447, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965)). Courts have thus construed the Bill of Attainder Clause to prohibit laws that legislatively determine guilt by "inflict[ing] punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 469, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). The individual at which such punishment is aimed need not be specifically named; "[t]he singling out of an individual for legislatively prescribed punishment constitutes an attainder whether the individual is called by name or described in terms of conduct which ... operates only as a designation of particular persons." *Minn. Pub. Interest Research Group*, 468 U.S. at 847, 104 S.Ct. 3348 (citing *Communist Party of the United States v. Subversive Activities Control Bd.*, 367 U.S. 1, 86, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961)). Nevertheless, even where the statute at issue names a specific individual, the statute "does not automatically offend the Bill of Attainder Clause." *Nixon*, 433 U.S. at 471–72, 97 S.Ct. 2777.

■ To determine whether a statute inflicts punishment forbidden by the Bill of Attainder Clause, the Supreme Court evaluates whether (1) "the challenged statute falls within the historical meaning of legislative punishment; (2) ... the statute, 'viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes;' and (3) ... the legislative record 'evinces a congressional intent to punish.'" *Minn. Pub. Interest Research Group*, 468 U.S. at 852, 104 S.Ct. 3348 (quoting *Nixon*, 433 U.S. at 473, 475–476, 478, 97 S.Ct. 2777).

■ In the instant case, it is important to note that the "mandatory forfeiture of a job or office" has historically been regarded as punishment within the meaning of the Bill of Attainder Clause. *Nixon*, 433 U.S. at 469, 97 S.Ct. 2777 (citing *United States v. Lovett*, 328 U.S. 303, 316, 106 Ct.Cl. 856, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946)); *see also Minn. Pub. Interest Research Group*, 468 U.S. at 852, 104 S.Ct. 3348. Second, Act No. 163 cannot be regarded as a carefully considered decision to further nonpunitive legislative purposes; the legislation was simply rubber-stamped into law by the Georgia General Assembly and Governor Barnes.[8] Moreover, in the instant proceedings neither defendant nor the Attorney General have advanced any legislative purpose whatsoever for Act No. 163, and no relevant legislative history exists. Third, the record indicates that Representative Jamieson introduced Act No. 163 at the behest of Toccoa City Commissioner Ferrell Morgan, who wished to prevent plaintiff from gaining political power in Toccoa.[9] This evidence circumstantially

8. It is the common practice of the Georgia General Assembly to approve, without scrutiny, all local legislation introduced by the legislative delegation representing the locality involved.

9. At the July 12, 2001 evidentiary hearing, defendant did not contest the truth of this assertion by City Manager Lewis and Judge Adams.

supports plaintiff's contention that "the legislative record evinces a congressional intent to punish." *Minn. Pub. Interest Research Group,* 468 U.S. at 852, 104 S.Ct. 3348.

As such, plaintiff's federal Bill of Attainder Clause claim clearly satisfies the test set forth by the Supreme Court in *Selective Service System v. Minnesota Public Interest Research Group,* 468 U.S. 841, 852, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984). Because the Supreme Court of Georgia uses the same test to evaluate Bill of Attainder Clause claims filed pursuant to the Georgia Constitution, *see Lee v. City of Villa Rica,* 264 Ga. 606, 607–08, 449 S.E.2d 295 (1994), plaintiff's state constitutional claim likewise prevails.

### E. Alleged Violation of Home–Rule Provisions of Georgia Law

Under Georgia law, specific procedures govern the amendment of a municipal charter. *See* O.C.G.A. § 36–35–3(b) (2001). Further, the Georgia Constitution provides:

> Laws of a general nature shall have uniform operation throughout this state and no local or special law shall be enacted in any case for which provision has been made by an existing general law, except that the General Assembly may by general law authorize local governments by local ordinance or resolution to exercise police powers which do not conflict with general laws.

Ga. Const. art. III, § 6, para. 4(a). The Supreme Court of Georgia has construed this language to mean that the General Assembly cannot enact any local or special law, such as one that would affect only a single municipality, concerning matters previously addressed through uniform, state-wide legislation. *See City of Atlanta v. Hudgins,* 193 Ga. 618, 628–29, 19 S.E.2d 508 (1942). Similarly, various home-rule provisions of the Georgia Code prohibit the General Assembly from interfering with municipal affairs. For example, O.C.G.A. § 36–35–7 provides that "[n]o local or special laws shall be enacted on subject matters over which municipal corporations are authorized to act pursuant to this chapter." O.C.G.A. § 36–35–7 (2001); *see also* O.C.G.A. § 36–34–8 (2001). Further, O.C.G.A. § 36–35–3 establishes that although the General Assembly may, by general law, "define this home rule power further or to broaden, limit, or otherwise regulate the exercise thereof," it cannot "pass any local law to repeal, modify, or supersede any action taken by a municipal governing authority under this Code section," with certain exceptions set forth at O.C.G.A. § 36–35–6 (2001). O.C.G.A. § 36–35–3(a) (2001). Lastly O.C.G.A. § 36–34–2 explicitly authorizes "the governing body of any municipal corporation . . . to define, regulate, and alter the powers, duties, qualifications, compensation, and tenure of all municipal officers, agents, and employees. . . ." O.C.G.A. § 36–34–2(2) (2001).

Any change respecting the qualifications for service on a city commission appears to fall squarely within the municipal powers enumerated at O.C.G.A. § 36–34–2(2). That provision plainly states that "the governing body of any municipal corporation shall have . . . [t]he power to define, regulate, and *alter* the . . . *qualifications* . . . of all municipal officers, agents, and employees. . . ." O.C.G.A. § 36–34–2(2) (2001) (emphases added). Act No. 163 clearly alters the qualifications for serving on the Toccoa City Commission; in fact, the legislative statement accompanying Act No. 163 reads: "To amend an Act incorporating the City of Toccoa . . . so as to provide for additional *qualifications* of members of the city commission. . . ." 2001 Ga.Laws 163 (emphasis added).

Act No. 163 thus constitutes a local or special law concerning a matter over which municipal corporations are explicitly authorized to act in violation of O.C.G.A. § 36–35–7, a modification, through local legislation, of an action of a municipal governing authority in violation of O.C.G.A. § 36–35–3(a), and a local or special law respecting matters previously addressed through general legislation, in violation of the Georgia Constitution. *See* Ga. Const. art. III, § 6, para. 4(a); *see also Hudgins,* 193 Ga. at 628–29, 19 S.E.2d 508. Act. No. 163 restricts the City Commission candidates and the voters of Toccoa to a greater degree than any other municipality in the entire State of Georgia. If enforced, Act No. 163 would "thereby arrest" the "uniformity of the general law...." *Hudgins,* 193 Ga. at 628–29, 19 S.E.2d 508.

**III. Prerequisites for Injunctive Relief**

 To prevail on a motion for a preliminary injunction, plaintiff must establish the following four factors: "(1) a substantial likelihood of success on the merits; (2) a threat of irreparable injury[;] (3) that [his] own injury would outweigh the injury to [defendant;] and (4) that the injunction would not disserve the public interest." *Tefel v. Reno,* 180 F.3d 1286, 1295 (11th Cir.1999). The standard for issuance of a permanent injunction is identical, "except that a plaintiff seeking permanent relief must show actual success on the merits, rather than a mere likelihood of success on the merits." *Spottsville v. Barnes,* 135 F.Supp.2d 1316, 1318 (N.D.Ga. 2001) (citing *Amoco Prod. Co. v. Vill. of Gambell,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987)); *see also Siegel v. LePore,* 234 F.3d 1163, 1213 (11th Cir.2000) (Carnes, J., dissenting).

 With respect to plaintiff's § 1973c, Equal Protection, First Amendment, and municipal home-rule claims, this court concludes that plaintiff has shown actual success on the merits. Second, the enforce-

ment of Act No. 163 by defendant would cause irreparable injury to plaintiff, forcing him to either resign from the Hospital Authority or forgo re-election to the City Commission. Such "[r]emoval from office is not the type of injury which can be compensated monetarily." *Hunt v. City of Longview,* 932 F.Supp. 828, 842 (E.D.Tex. 1995). Third, the threatened harm to plaintiff and to the voters of Toccoa certainly outweighs defendant's interest in enforcing an illegitimate and unconstitutional statute. Fourth, granting permanent injunctive relief against the enforcement of Act No. 163 will not disserve the public interest. The voters of Toccoa who wish to re-elect plaintiff to the City Commission shall not be improperly or unconstitutionally deprived of their candidate of choice, and those voters who oppose plaintiff's candidacy in light of his simultaneous service on the Hospital Authority may express that preference in the November election.

**Conclusion**

The court therefore declares Act No. 163 unconstitutional and invalid for the reasons set forth herein. Having determined that Act No. 163 violates federal and state law, as well as the constitutions of the United States and Georgia, plaintiff's verified petition for declaratory judgment and injunctive relief [1–1] is hereby GRANTED. Defendant City of Toccoa, its officers, agents, servants, employees, attorneys, and all persons acting in concert or participation with the City of Toccoa who receive actual notice of this order by personal service or otherwise, are hereby RESTRAINED and ENJOINED from taking any actions of any kind, legal or otherwise, to assert and/or enforce Act No. 163.