### 33989. SAVAGE v. CITY OF ATLANTA et al.

MARSHALL, Justice.

In the present case, we are called upon to determine the legality of the action of the Council of the City of Atlanta in: (1) enacting an amendment to the Ordinances of the City of Atlanta authorizing monthly expense payments to council members, (2) enacting an amendment to the city charter granting a compensation increase to the office of the Mayor of the City of Atlanta, and (3) enacting an amendment to the city charter granting a compensation increase to the office of the President of the Council of the City of Atlanta.

The validity of the city charter and city ordinance amendments authorizing these appropriations must be adjudged, for the most part, under the Municipal Home Rule Act of 1965 (Ga. L. 1965, p. 298, as amended; Code Ann. §§ 69-1015—69-1021) and the 1973 Charter for the City of Atlanta (Ga. L. 1973, p. 2188, as amended) (referred to hereinafter at times as the 1973 City Charter).

The plaintiff is a resident, property owner, and taxpayer of the City of Atlanta, and he brings this action for a declaratory judgment that the ordinances

authorizing the foregoing expenditures are unconstitutional, illegal, void, and unenforceable.[1] Accordingly, the plaintiff demands that the Commissioner of Finance of the City of Atlanta, one of the defendants herein, be enjoined from paying out any funds under the authority of these ordinances and that the various defendants be required to reimburse the city for sums illegally paid out. See § 6-103 (e) of the 1973 Charter for the City of Atlanta (Ga. L. 1973, pp. 2188, 2236, 2237).[2]

The facts set out in the following four paragraphs are not in dispute:

(1) On January 3, 1978, the city council adopted an ordinance amending § 3-104 of the 1973 city charter (Ga. L. 1973, pp. 2188, 2203),[3] increasing the compensation of the office of Mayor of the City of Atlanta from $40,000 to $50,000 per annum. The ordinance became effective by operation of law on January 11, 1978, without the signature of the mayor.[4]

(2) On December 19, 1977, the city council adopted an ordinance amending the Ordinances of the City of Atlanta by adding a new § 1-1015, authorizing the payment of expenses of council members in an amount not to exceed $300 per month for a total amount not to exceed $3,600 per year. This ordinance became effective by

---

[1]An equitable petition by a taxpayer will lie to prevent an illegal diversion of tax money, such as an improper payment of salary to a public official. *Early v. Kent,* 215 Ga. 49, 51 (108 SE2d 708) (1959) and cits.

[2]Under § 6-103 (e), the director of finance is required to deduct from any payment due by the city to any person, firm or corporation the amount due the city prior to the payment of any such sum.

[3]Under § 3-104 of the City Charter, as enacted in 1973, the compensation for office of mayor was set at $40,000 per annum.

[4]Under § 2-403 of the 1973 City Charter, infra, the mayor is given the power to approve or veto ordinances or resolutions passed by the city council. However, if the mayor does not approve or veto the ordinance or resolution within the time provided by law, it becomes law without his approval.

operation of law without the mayor's signature on December 28, 1977.[5]

(3) On March 20, 1978, the city council adopted an ordinance amending § 2-203 of the 1973 City Charter (Ga. L. 1973, pp. 2188, 2195)[6] increasing the compensation of the office of president of the city council from $10,000 per annum to $14,000 per annum. This increase was made retroactive to the first Monday in January, 1978. This ordinance was approved by operation of law without the signature of the mayor on March 28, 1978.

(4) The present term of the mayor and council members commenced on January 3, 1978, and will run through the first Monday in January of 1982. The first day for qualifying for the present term of these offices was August 22, 1977, with the election being held on October 4, 1977.

The trial judge rendered a judgment in which he ruled that the expense authorizations and the compensation increases are valid in their entirety. This appeal is from that judgment.

1. The plaintiff argues that the amendment to § 3-104 of the 1973 City Charter, increasing the per annum compensation of the office of mayor, is invalid and unenforceable under Code Ann. § 69-1019 (a) to the extent that the compensation increase is made effective upon approval of the ordinance.

Code Ann. § 69-1019 provides, in material part, that: "The governing authority of each incorporated municipality is hereby authorized to fix the salary, compensation and expenses of its municipal employees and members of its municipal governing authority . . .

---

[5]Section 1-1015 was again amended by City Council on February 6, 1978. This amendment became effective on February 14, 1978, by operation of law without the signature of the mayor. The amendment did not alter the ordinance as originally enacted in any material respect, and it is not in controversy in this case.

[6]Section 2-203 of the City Charter, as enacted in 1973, set the compensation for the office of President of City Council at $10,000 per annum.

provided that any action to increase the compensation of the elective members of the municipal governing authority shall be subject to the following conditions and requirements: (a) Any such increase in compensation shall not be effective until after the taking of office of those elected at the next regular municipal election which is held immediately following the date on which the action to increase such compensation was taken . . ."[7]

The city council makes what appears at first blush to be the illogical argument that the mayor is not a member of the "municipal governing authority" and, therefore, that the authority of the city council to increase the compensation paid to the office of the mayor is not subject to the strictures of Code Ann. § 69-1019 (a). Upon close examination, we find that we are in agreement with this argument.

"The generally accepted meaning of the phrase 'governing authority' or 'governing body,' in reference to the operation of city or county governments, is a council or board performing legislative functions . . ." *Humthlett v. Reeves,* 212 Ga. 8, 12 (90 SE2d 14) (1955); *Peek v. City of Albany,* 101 Ga. App. 564, 566 (114 SE2d 451) (1960). Furthermore, we find that the phrase "municipal governing authority," as used in the context of the

---

[7] As originally enacted, the Municipal Home Rule Act of 1965 did not grant the municipal governing (or legislative) authority the power to take action affecting the compensation and expenses and allowances in the nature of compensation for the members of the municipal governing authority. Code Ann. § 69-1018 (Ga. L. 1965, pp. 298, 302, 303). However, the municipal governing authorities were given the power to fix the salary, compensation and expenses of municipal employees. Code Ann. § 69-1019 (Ga. L. 1965, pp. 298, 303, 304). In 1973, Code Ann. §§ 69-1018 and 69-1019 were amended so as to give the municipal governing authorities the power to fix the salary, compensation and expenses of members of its municipal governing authority under the conditions and requirements specified in subsections (a), (b) and (c) to Code Ann. § 69-1019.

Municipal Home Rule Act of 1965 and the 1973 Charter for the City of Atlanta, means that branch of the municipal government possessing legislative powers. The Home Rule Act provides: *"The governing authority of each municipality shall have legislative power* to adopt clearly reasonable ordinances, resolutions or regulations relating to its property, affairs and local government for which no provision has been made by general law and which are not inconsistent with the Constitution or any charter provision applicable thereto." (Emphasis supplied.) Code Ann. § 69-1017 (a). Under the 1973 City Charter, "All legislative powers of the City are hereby vested in the Council (hereinafter at times referred to as the 'governing body') of the City of Atlanta." Section 1-103 (a) of the 1973 City Charter (Ga. L. 1973, pp. 2188, 2190).

In determining whether a municipal officer is part of the governing authority of the municipality, the question is whether that municipal officer possesses legislative power. *Flanigen v. Preferred Development Corp.,* 226 Ga. 267 (174 SE2d 425) (1970); *Palmer v. Claxton,* 206 Ga. 860 (59 SE2d 379) (1950). Under the 1973 Charter for the City of Atlanta, the mayor does not possess legislative power. Rather, all executive and administrative powers of the city are vested in the mayor and executive branch of city government. Section 1-104 of the City Charter (Ga. L. 1973, pp. 2188, 2191). Under the 1973 City Charter, the mayor is the chief executive officer of the city, and the executive powers he possesses include the power to execute and enforce provisions of the city charter and city ordinances, as well as the power to approve or veto proposed ordinances and resolutions passed by the city council. Section 3-105 of the 1973 City Charter (Ga. L. 1973, pp. 2188, 2203-2205). Under Section 2-403 of the 1973 City Charter (Ga. L. 1973, pp. 2188, 2199, 2200)[8], the mayor has the power to veto or approve city ordinances or resolutions; city ordinances and resolutions become effective by operation of law if the mayor neither vetoes nor approves them; and the city council has the power to override a veto of the mayor by a two-thirds

---

[8] See fn. 4, supra.

majority of its total membership.

As recognized in *Jackson v. Inman,* 232 Ga. 566 (207 SE2d 475) (1974), under the 1973 Charter for the City of Atlanta the Mayor of the City of Atlanta is the executive branch of municipal government, and the Council of the City of Atlanta is the legislative body, thus creating a classic separation of powers not found in the old charter (see *Flanigen v. Preferred Development Corp.,* 226 Ga. 267, supra) and not required in municipal governments as a matter of constitutional law. *Ford v. Mayor &c. of Brunswick,* 134 Ga. 820 (68 SE 733) (1910).

The fact that the mayor has the power to veto ordinances passed by the city council does not make him a member of the council. "Municipal charters in this country, as formerly in England, do not always agree in the constituents of the council or governing body. Whether the mayor shall be the presiding officer, or shall be regarded as a member, depends upon the proper construction of the charter, or the law under which the corporation is organized . . . but the fact that the mayor is required to approve certain ordinances before they take effect does not make him a member of the governing body." McQuillin, Municipal Corporations, § 13.19, pp. 498-500 (1968).

Under Code Ann. § 69-310 (a) (Ga. L. 1962, pp. 140, 141; as amended) the municipal governing body has authority to alter the compensation of all municipal officers. Since the mayor falls in the category of a municipal officer, who is not a member of the municipal governing (or legislative) authority, the council's authority to alter compensation for the office of mayor is found in Code Ann. § 69-310, supra, and is not subject to the requirements of Code Ann. § 69-1019 (a), supra, that increases in the mayor's compensation not take effect until the term after which they are voted on.

As a result, we hold that the action of the city council in increasing the compensation paid to the office of mayor on January 3, 1978, becoming effective on January 11, 1978, is valid. The trial court was correct in upholding the validity of the compensation increase granted to the mayor.

2. The next question for decision concerns the

compensation increase granted to the office of President of the Council of the City of Atlanta.

Under § 2-204 of the 1973 City Charter (Ga. L. 1973, pp. 2188, 2196), it is expressly provided that the president of the council shall preside at meetings of the council but shall not be a member of that body; it is further provided in § 2-204 of the 1973 City Charter that the president of the council shall vote only in the case of a tie vote of the council.

The fact that the mayor of the town is the presiding officer of the council and has the power to cast tie-breaking votes does not make him a member of the council if the city charter provides that he is not to be a member. See *Palmer v. Claxton,* 206 Ga. 860, supra; McQuillin, Municipal Corporations, supra, § 13.19. We are, therefore, persuaded that even though the president of the city council is the presiding officer of the council and possesses the authority to cast tie-breaking votes, he should not be considered a member of the council, since the city charter expressly provides that he is not to be a member.

Thus, we find that the compensation increase granted to the office of the council president stands on the same footing as the compensation increase granted to the office of the mayor. That is, the council president is a municipal officer who is not a member of the municipal governing (or legislative) authority. Thus, we hold that the city council was authorized under Code Ann. § 69-310, supra, to increase the per annum compensation paid to the president of the council without delaying the effectiveness of the compensation increase until the next succeeding term.

However, we do find that the retroactivity feature of the compensation increase granted to the office of the president of the city council is unconstitutional under Art. I, Sec. I, Par. VII of the Georgia Constitution (Code Ann. § 2-107), which prohibits the enactment of retroactive laws.[9]

---

[9]As originally enacted, § 2-307 of the 1973 City Charter (Ga. L. 1973, pp. 2188, 2198), provided that changes by the municipal governing authority in the salary of the mayor, of the president of the city council,

This state constitutional provision, of course, applies to municipal corporations. See *Pharr Rd. Invest. Co. v. City of Atlanta,* 224 Ga. 752, 757 (164 SE2d 803) (1968). See also Art. III, Sec. VIII, Par. XII of the Georgia Constitution (Code Ann. § 2-1413 (2)) prohibiting the General Assembly from granting a public officer a retroactive compensation increase.

3. The final question for decision is whether the passage of § 1-1015 of the Ordinances of the City of Atlanta, authorizing the payment of expenses to council members in an amount not to exceed $300 per month and $3,600 per year, is, in effect, "action to increase the

---

and of council members would not become effective until the date of the commencement of terms of the mayor, president of the city council, and council members elected at the next regular election following such changes. However, § 2-307 was amended in 1975 (Ga. L. 1975, p. 4775) so as to allow the council, to the extent allowable by law, to change by ordinance the annual salary of the mayor, of the president of the city council, and of council members, provided that no change in any of these salaries would become effective until approval of the ordinance changing such salary.

It can thus be seen that the retroactivity feature of the ordinance granting a salary increase to the office of city council president would have been invalid under § 2-307 of the city charter if the compensation increase had been effectuated merely by the passage of a city ordinance. This is so because Code Ann. § 69-1017(a) prohibits the governing authority of a municipality from passing ordinances inconsistent with city charter provisions.

Code Ann. § 69-1017(b) does give municipalities the home rule authority to amend the city charter. The compensation increase granted to the council president was effectuated by amending § 2-203 of the city charter. Since the retroactivity feature of the compensation increase is invalid under the State Constitution, it is unnecessary to determine if it would have been valid as a pro tanto repeal by implication of § 2-307 of the city charter.

compensation" of the council members, within the meaning of Code Ann. § 69-1019.

We hold that under the circumstances present here, such a lump-sum, unverified, monthly expense authorization is tantamount to the payment of compensation rather than the reimbursement of expenses. We arrive at this conclusion, particularly because the council members are still reimbursed for other expenses upon submission of documentation that the expenses were actually incurred by them.

Therefore, we hold that the ordinance authorizing these appropriations is invalid under both subsections (a) and (b) of Code Ann. § 69-1019.

The ordinance is invalid under Code Ann. § 69-1019 (a), because this subsection of the statute mandates that any increase in the compensation of the elective members of the municipal governing authority shall not be effective until the term after it is voted on.[10]

The ordinance is also invalid under Code Ann. §

---

[10]It is true that § 2-307 of the 1973 City Charter, as amended in 1975, allows changes by the municipal governing authority in the salary paid council members to become effective upon the date of the ordinances effectuating these salary changes. However, we find a conflict between § 2-307 of the City Charter and Code Ann. § 69-1019(a), which requires any increase in compensation which the municipal governing authority grants to its elective members not to become effective until after the taking of office of those elected at the next regular municipal election which is held immediately following the date on which the action to increase such compensation is taken. Therefore, insofar as § 2-307 of the 1973 Charter for the City of Atlanta allows increases by the municipal governing authority in the salary paid to council members to become effective on the date of the ordinances implementing these salary increases, § 2-307 is unconstitutional under Art. I, Sec. II, Par. VII of the Constitution of Georgia of 1976 (Code Ann. § 2-207). See *City of Atlanta v. Hudgins,* 193 Ga. 618 (1) (19 SE2d 508) (1942).

69-1019 (b), under which the municipal governing authority is prevented from taking any action to increase the compensation of its elective members "during the period of time beginning with the date that candidates for election to membership on the municipal governing authority may first qualify as such candidates and ending with the date members of the municipal governing authority take office following their election." As stated earlier in the opinion, the first date for the candidates to qualify for election to the city council was August 22, 1977; this ordinance was enacted on December 19, 1977; and the candidates elected at the October 4 election did not take office until January 3, 1978. Thus, the passage of this ordinance occurred within the period prohibited by Code Ann. § 69-1019(b).

4. In sum, we hold that the compensation increase granted to the office of Mayor of the City of Atlanta is legal. The portion of the trial court's judgment refusing to declare illegal the amendment to § 3-104 of the city charter, which authorizes this compensation increase, is affirmed. We hold that the compensation increase granted to the office of President of the Council of the City of Atlanta is also legal insofar as it operates prospectively, but it is unconstitutional and illegal insofar as it has been made retroactive. We, therefore, affirm in part and reverse in part that portion of the trial court's judgment sustaining the amendment to § 2-203 of the City Charter, which authorizes this compensation increase. Finally, we hold that the purported expense authorization which the council members granted to themselves is illegal. We reverse that portion of the trial court's judgment sustaining § 1-1015 of the Ordinances of the City of Atlanta, which authorizes these expenditures.

The judgment is, therefore, affirmed in part and reversed in part, and the case is remanded to the trial court with the direction that the trial court enjoin future payments held in this opinion to be illegal and unauthorized and take whatever action is deemed necessary to recoup whatever past sums have been illegally paid.

*Judgment affirmed in part, reversed in part, and remanded with direction. All the Justices concur, except*

*Hall, J., who concurs in Divisions 1 and 3 and the judgment and Jordan, J., who dissents as to Divisions 1 and 2 and the judgment.*

ARGUED SEPTEMBER 19, 1978 — DECIDED DECEMBER 5, 1978.

*Skinner, Wilson, Beals & Strickland, Frank B. Strickland, Donald F. Walton,* for appellant.
*Ferrin Y. Mathews, John R. Myer, Nina M. Radokovich, Tom Bowman,* for appellees.