## S11A1371. GILES et al. v. SWIMMER et al.

(725 SE2d 220)

BENHAM, Justice.

This case involves an underlying action for quiet title and comes to us from the trial court's grant of appellee Branch Banking & Trust's (BB&T) motion for summary judgment. The facts show that in December 1988, William K. Folds executed a promissory note (the "Note") to Adolph Swimmer for a loan of $128,000. As collateral, two security deeds were executed from Folds to Swimmer for (i) two four-acre tracts of land and (ii) a one-acre tract of land. The deeds were recorded in Towns County in February 1991. Because Folds was president of Inter-American Construction Company ("Inter-American"), two other security deeds were recorded in March 1991 to "correct" the original security deeds to reflect Inter-American as the entity pledging the tracts of land.

In March 1997, Swimmer assigned the Note and the security deeds for the properties to Gwinnett National Bank (GNB). The collateral assignment was made to secure a master note with GNB and was scheduled to terminate upon Swimmer's repayment of the loan. Two years later, in February 1999, Folds used the one-acre tract of land as collateral to secure a mortgage from Sunshine Mortgage. A security deed reflecting the mortgage loan and a quitclaim deed from Inter-American were recorded on June 14, 1999. Also on June 14, 1999, a quitclaim deed ("the 1999 quitclaim deed") was recorded releasing "described property" from GNB to Folds and Inter-American; however, the deed failed to attach the description of the property.

BB&T became the successor to GNB in November 2001. By that time, Swimmer had satisfied his GNB loan and the collateral assignment of the one-acre tract of land to GNB had terminated. Four years later, in November 2005, a Satisfaction of Mortgage from Countrywide Home Loans was recorded showing that Folds' 1999 mortgage with Sunshine Mortgage was satisfied. The Satisfaction that was recorded, however, did not reference the security deed from Folds to Sunshine Mortgage, but rather the 1999 quitclaim deed from GNB to Folds.

On November 7, 2005, Folds transferred approximately seven acres of the two four-acre tracts of property (the "seven acres") to

Keith Holcomb and Eugene McClure by warranty deed. About a month later, on December 12, 2005, the Towns County court clerk stamped the security deed between Folds and Swimmer for the two four-acre tracts as "satisfied."

In early 2006, Holcomb and McClure transferred the seven acres to appellants Steve Giles, Ronnie Stroud, and Jackie Greg Taylor by warranty deed. In December 2006, appellants Giles, Stroud, and Taylor subdivided the seven acres into six lots as part of the Hickory Hollow subdivision and then conveyed, by warranty deed, two of the lots to grantees who later intervened as plaintiffs in the quiet title action.

In May 2007, Swimmer submitted to BB&T an "Affidavit of Correction of Termination of Collateral Assignment of Loan Documents and Satisfaction of Promissory Note" ("Affidavit") and a "Termination of Collateral Assignment of Loan Documents and Satisfaction of Promissory Note and Security Deed" ("Termination"). At Swimmer's lawyer's request, BB&T executed and recorded these documents in June 2007. The Affidavit and Termination essentially provided that the 1999 quitclaim deed from GNB to Folds was incorrectly signed by the bank and was not the correct document to terminate the collateral assignment. In November 2010, while the underlying litigation was pending, the trial court ordered the Affidavit and Termination to be stricken from the county's deed records.

In late December 2008 and early January 2009, Swimmer foreclosed on the original 1991 security deeds from Folds and purchased the property at the foreclosure sale. The appellants and interveners, who purportedly had an interest in the property, were never provided notice of the foreclosure and sale. Appellants filed a complaint against Swimmer and BB&T seeking quiet title and asserting claims of personal injury, slander of title, actual damages, punitive damages, and attorney fees. BB&T moved for summary judgment, and the trial court granted the motion.[1] We affirm.

1. As their first enumeration of error, appellants allege that the trial court erred when it granted summary judgment to BB&T because they argue that genuine issues of material fact remain for resolution by a factfinder.

> "On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most

---

[1] Swimmer's motion for summary judgment is still pending below.

favorable to the nonmoving party, warrant judgment as a matter of law." [Cits.]

*Campbell v. The Landings Assn., Inc.*, 289 Ga. 617, 618 (713 SE2d 860) (2011). Since the trial court struck the Affidavit and Termination executed by BB&T in 2007 from the county's deed records, the trial court determined there was no basis for BB&T to be a part of the quiet title action and granted summary judgment. Our de novo review of the appellate record confirms that there is no evidence that BB&T had title or other interest in the land at issue at the time of its motion for summary judgment, and, as such, there were no genuine issues of material fact remaining for review by a factfinder as to BB&T and appellants' quiet title claim. Accordingly, this allegation of error cannot be sustained.

2. Appellants allege that the trial court erred when it did not sustain their claim of slander of title. Specifically, appellants argued that BB&T slandered their title to the property at issue when BB&T executed, at Swimmer's behest, the Affidavit and Termination which purportedly retracted the 1999 quitclaim deed between Folds and BB&T's predecessor GNB. The trial court found that there was no evidence the documents were false and malicious on the part of BB&T and that there was no evidence of special damages to sustain a slander of title claim.

The elements of proof for a slander of title claim are as follows:

> The owner of property may bring an action for "libelous or slanderous words which falsely or maliciously impugn his title if any damage accrues to him therefrom." OCGA § 51-9-11. "In order to sustain an action of this kind, the plaintiff must allege and prove the uttering and publishing of the slanderous words; that they were false; that they were malicious; that he sustained special damage thereby; and that he possessed an estate in the property slandered." (Citation and punctuation omitted.)

*Latson v. Boaz*, 278 Ga. 113, 114 (598 SE2d 485) (2004). In their complaint, appellants sought special damages, but did not carry their burden of proffering specific evidence of special damages once BB&T pointed out the absence of such evidence in support of appellants' case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Indeed, to maintain an action for slander of title, evidence of special damages must be specific. *Latson v. Boaz*, supra, 278 Ga. at 114-115. See also *Harmon v. Cunard*, 190 Ga. App. 19 (378 SE2d 351) (1989) (insufficient proof of special damages where no specific figures offered for the damage allegedly suffered). It appearing that appel-

lants failed to show specific damages in support of their claim of slander of title, the trial court did not err when it granted BB&T's motion for summary judgment.

*Judgment affirmed. All the Justices concur, except Hines, J., not participating.*

DECIDED MARCH 5, 2012.

*Daniel, Lawson, Tuggle & Jerles, Tom W. Daniel,* for appellants.
*Brock, Clay, Calhoun & Rogers, Richard W. Calhoun, Parker, Hudson, Rainer & Dobbs, Constance M. Ewing, Nancy H. Baughan, Harold D. Ehrman,* for appellees.