S12A0849, S12X0850. INAGAWA v. FAYETTE COUNTY et al.;
and vice versa.
(732 SE2d 421)

HUNSTEIN, Chief Justice.

Jamie Inagawa, the Solicitor-General of Fayette County, filed a mandamus action against Fayette County and its Commissioners in their official capacities (collectively, "the County"), asserting that since July 1, 2007 his compensation has been incorrectly calculated. The trial court granted partial summary judgment to Inagawa and partial summary judgment to the County, and each party appeals. We conclude that the trial court correctly held that Inagawa was improperly compensated beginning in July 2007. We disagree, however, with the trial court's conclusion that the County has properly compensated Inagawa as of January 1, 2009 in accordance with an amended local law, because we find that amendment invalid. Accordingly, we affirm in part and reverse in part.

On appeal from a grant of summary judgment, we conduct a de novo review of the evidence to determine whether there are any genuine issues of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. *Giles v. Swimmer*, 290 Ga. 650 (1) (725 SE2d 220) (2012). So viewed, the evidence establishes as follows.

Inagawa took office in January 2005 and was re-elected to a second term beginning in January 2009. As of the beginning of Inagawa's first term, the local law governing the Fayette County Solicitor-General's compensation, known as House Bill 94-1668 (hereinafter, "the 1994 Act"), fixed that compensation at "an amount equal to 75 percent of the salary of the judge in the State Court of Fayette County." Ga. L. 1994, pp. 4980, 4987, § 21.[1] The State Court judge's salary, in turn, was set at "an amount equal to 85 percent of the base salary of a judge in the superior courts in the State of Georgia." Id. at pp. 4986-4987, § 17.

---

[1] State law provides that solicitors-general are to be "compensated from county funds as provided by local law." OCGA § 15-18-67 (a).

Also as of the beginning of Inagawa's first term, Fayette County was paying the solicitor-general and the State Court judge each a $5,000 annual supplement. Beginning in 2007, the County substantially increased the annual supplement paid to the State Court judge: for the year beginning on July 1, 2007, the State Court judge received a supplement in the amount of $38,237; from June 1, 2008 to the present, the State Court judge has received an annual supplement of $32,400. The solicitor-general, however, has continued to receive the $5,000 supplement.

In 2008, the 1994 Act was amended by House Bill 08-1416 (hereinafter, "the 2008 Act"). Ga. L. 2008, p. 3834. Prompted by a resolution passed by the Fayette County Board of Commissioners, Section 2 of the 2008 Act fixed the solicitor-general's compensation at "an amount equal to 68 percent of the base salary of a judge of the superior courts for the State of Georgia." Id. at pp. 3834-3835, § 2. Section 1 of the 2008 Act set the State Court judge's compensation at "an amount equal to 90 percent of the base salary of a judge of the superior courts in the State of Georgia plus 90 percent of the supplement paid to superior court judges in the Griffin Judicial Circuit." Id. at p. 3834, § 1. Section 3 of the 2008 Act made the amendment effective "upon its approval by the Governor," id. at p. 3835, § 3, which occurred on May 13, 2008.

After the implementation of the 2008 Act, Inagawa filed his mandamus petition, contending that he had been receiving insufficient compensation in violation of the 1994 Act since July 1, 2007, when the County increased the supplement paid to the State Court judge without increasing the solicitor-general's compensation.[2] Inagawa asserted further that, had he been receiving the correct compensation under the 1994 Act at the time the 2008 Act went into effect, the 2008 Act would have had the effect of decreasing his compensation during his term of office in violation of OCGA § 15-18-67 (b) ("no solicitor-general's compensation or supplement shall be decreased during his or her term of office"). Because of this conflict with state law, Inagawa posited, the 2008 Act was void at its inception and the original 1994 Act remained intact, requiring the County to have paid him annual compensation equal to 75 percent of the State Court judge's salary plus supplement.

In its order on the parties' cross-motions for summary judgment, the trial court agreed with Inagawa's construction of the 1994 Act

---

[2] Specifically, Inagawa contends that, from July 1, 2007 through May 31, 2008, he received only 58% of the total compensation paid to the State Court judge, and that from June 1, 2008 through the present, he has received only 62% thereof. The County has stipulated to the accuracy of these figures.

and thus found that Inagawa had received insufficient compensation under the 1994 Act beginning on July 1, 2007. The court noted that the 1994 Act fixes the salary for the State Court judge as a percentage of the "base salary" of the superior court judges while the description of the salary for the solicitor-general excludes the word "base." The court thus ruled that Inagawa should have received 75 percent of the total compensation — base salary plus supplement — of the State Court judge. Furthermore, the court found that the 2008 Act, if applied to Inagawa as of its effective date, would violate OCGA § 15-18-67 (b) by reducing his compensation during his term of office. Rather than declaring the 2008 Act invalid, the court determined that the 2008 Act did not become effective as to Inagawa until the beginning of his second term. Therefore, the court held, Inagawa had been appropriately compensated since that time. The net effect of the trial court's ruling was to leave the 2008 Act intact and award Inagawa backpay for the period between July 1, 2007 and January 1, 2009.

1. We first address the issue raised in the County's cross-appeal, because its disposition affects our analysis of the issue raised in the main appeal. The question is whether, under the 1994 Act, the solicitor-general's compensation is to be calculated as a percentage of the State Court judge's (a) salary only or (b) salary plus supplement. Our well established rules of statutory interpretation require courts to ascertain the legislature's intent in enacting the law in question. OCGA § 1-3-1 (a). In so doing, we are required to give all words in the enactment due weight and meaning and are forbidden from disregarding any legislative language "unless the failure to do so would lead to an absurdity manifestly not intended by the legislature." (Citation and punctuation omitted.) *Labovitz v. Hopkinson*, 271 Ga. 330, 336 (3) (519 SE2d 672) (1999).

The 1994 Act requires the solicitor-general's compensation to be calculated as a percentage of the State Court judge's "salary," while requiring the State Court judge's compensation to be calculated as a percentage of the Superior Court judge's "base salary." Ga. L. 1994, pp. 4986-4987, §§ 17, 21. Neither "salary" nor "base salary" is defined in the legislation. "[W]here a qualifying word or phrase is found in one provision and not in some other provision, the presumption is that the other provision was not intended to have such qualification." *Thompson v. Talmadge*, 201 Ga. 867, 883 (2) (41 SE2d 883) (1947). Thus, we must presume that the legislature intended some distinction between these two terms. In the absence of explicit definitions or any alternative explanation by the County, we must distinguish these two terms by concluding that "base salary" was intended to mean salary only and that "salary" was intended to mean salary plus supplement. This construction accords with a longstanding recognition that county

supplements constitute part of an elected official's "salary." See Op. Atty. Gen. U1985-31, n. 1 (county supplement considered part of superior court clerk's "salary"); Op. Atty. Gen. U1980-30 (probate judge's salary consists of both legislatively mandated minimum salary and county supplement). See also Op. Atty. Gen. U1981-19, n. 1 (characterizing supplements as distinct from "base salaries"). Accordingly, we agree with the trial court's conclusion that, when the State Court judge's supplement was increased in 2007, this constituted an increase in the judge's "salary," which, under the 1994 Act, should have triggered an increase in the solicitor-general's salary effective July 1, 2007.

2. The parties have stipulated that, immediately before the effective date of the 2008 Act, the State Court judge's total compensation, including the county supplement, was $140,451.77. In accordance with our conclusion in Division 1, this amount is the "salary" upon which the solicitor-general's compensation was to be determined under the 1994 Act, and Inagawa thus should have been receiving 75 percent of this amount, or $105,338.83, as of the time the 2008 Act became effective. As the parties have stipulated, Inagawa's actual compensation was $86,771.43. Therefore, it is clear that the 2008 Act had the effect of reducing the compensation to which Inagawa was entitled during his term of office, in violation of OCGA § 15-18-67 (b). The question thus becomes how to resolve this conflict.

The trial court resolved the dilemma by concluding that the 2008 Act did not take effect as to Inagawa until the beginning of his next term of office, thereby avoiding any violation of OCGA § 15-18-67 (b). Reasoning that the legislature would not have intended to enact an invalid law, the trial court construed the effective date of the 2008 Act, at least as applied to the solicitor-general's compensation, to be the first day of the solicitor-general's next term of office, or January 1, 2009.

The problem with this reasoning, however, is that the trial court simply had no need to engage in statutory construction in this instance. Section 3 of the 2008 Act plainly states, "[t]his Act shall become effective upon its approval by the Governor or upon its becoming law without such approval." Ga. L. 2008, p. 3835. Because this provision is clear and susceptible of only one meaning, "judicial construction is both unnecessary and unauthorized." *Bible v. Bible*, 259 Ga. 418, 419 (383 SE2d 108) (1989). Accord *Evans v. Employees' Retirement System of Ga.*, 264 Ga. 729, 731 (1) (450 SE2d 195) (1994) (" 'the use of plain and unequivocal language in a legislative enactment obviates any necessity for judicial construction' "). Therefore, the trial court had no authority to "construe" Section 3 of the 2008 Act as meaning anything other than what it says on its face. See *Finney*

*v. Dept. of Corrections*, 263 Ga. 301, 302-303 (1) (434 SE2d 45) (1993) ("The purpose of the judiciary is not . . . to determine what [the law in question] should provide. Our authority extends only to a construction of [the law] as it was enacted by the General Assembly."). Cf. *City of Jesup v. Bennett*, 226 Ga. 606, 609 (2) (176 SE2d 81) (1970) (permissible to deviate from literal language of act to correct "obvious typographical or clerical error").

It follows that, under the plain language of Section 3, the 2008 Act became effective when the Governor signed it on May 13, 2008. So read, the 2008 Act irreconcilably conflicts with OCGA § 15-18-67 (b), which prohibits the reduction of a solicitor-general's compensation during his term of office. Given this conflict, the local act must yield to the general statute. See *Savage v. City of Atlanta*, 242 Ga. 671 (3) (251 SE2d 268) (1978) (city ordinance granting increase in compensation to city council members, as well as provision of city charter purporting to sanction such an increase, held invalid because they conflicted with general statute requiring that increases in compensation take effect no earlier than beginning of next term of office). See also Ga. Const. 1983, Art. III, Sec. VI, Par. IV (a) ("Laws of a general nature shall have uniform operation throughout this state and no local or special law shall be enacted in any case for which provision has been made by an existing general law"); *City of Atlanta v. Hudgins*, 193 Ga. 618 (1) (19 SE2d 508) (1942) (general laws prevail over conflicting local laws).

Accordingly, Section 2 of the 2008 Act, which reduced the compensation of the Fayette County Solicitor-General during his term of office, is invalid.[3] See *Savage v. City of Atlanta*, 242 Ga. at 679-680 (3) & n. 10 (invalidating local law that was contrary to general law); *City of Atlanta v. Hudgins*, 193 Ga. at 630-631 (1) (same). As a result, Section 21 of the 1994 Act, which Section 2 of the 2008 Act purported to amend, remains in full force and effect, and Inagawa was entitled to compensation in accordance with that provision from July 1, 2007 forward. The trial court on remand will calculate the total backpay owed, together with interest as applicable, in accordance with the terms of this opinion.

*Judgment affirmed in part and reversed in part, and case remanded with direction. All the Justices concur.*

---

[3] Contrary to the apparent concern of the trial court, this holding does not necessarily invalidate that section of the 2008 Act prescribing a new compensation formula for the State Court judge. We need not and do not purport to resolve that issue here.

DECIDED OCTOBER 15, 2012.

*Richard P. Lindsey, Jon T. Sellers*, for appellant.
*Scott D. Bennett*, for appellees.

