**FIRST DIVISION
BARNES, P. J.,
BROWN and HODGES, JJ.**

**February 22, 2024**

# In the Court of Appeals of Georgia

A22A0508. WILLIAMS v. DEKALB COUNTY et al.

HODGES, Judge.

In *Williams v. DeKalb County*, 364 Ga. App. 710 (875 SE2d 865) (2022) ("*Williams II*"), we considered segments of Edward Williams' third amended complaint challenging the manner in which the DeKalb County Board of Commissioners ("the commissioners") introduced and passed a 2018 salary increase in alleged violation of the Open Meetings Act.[1] See OCGA § 50-14-1 et seq. We affirmed that portion of the Superior Court of DeKalb County's order dismissing Williams' complaint, concluding, under then-prevailing precedent, that Williams

---

[1] For a detailed factual summary and a review of the procedural history of this case, see *Williams v. DeKalb County*, 308 Ga. 265, 267-270 (1) (840 SE2d 423) (2020) ("*Williams I*"); see also *Williams II*, 364 Ga. App. at 711-713.

lacked taxpayer standing to pursue claims for injunctive relief against DeKalb County CEO Michael Thurmond ("Thurmond"). See *Williams II*, 364 Ga. App. at 714-717 (1). We also affirmed the trial court's refusal to conduct an in camera review of certain e-mails between the commissioners and the DeKalb County attorney. See id. at 728-730 (3). However, we vacated that portion of the trial court's judgment granting the commissioners' motion for judgment on the pleadings because the trial court improperly considered affidavits attached to the commissioners' answer without properly converting the motion to one for summary judgment. See id. at 717-728 (2). Therefore, we affirmed the trial court's judgment in part, vacated the judgment in part, and remanded the case for further proceedings. See id. at 730.

The Supreme Court of Georgia granted Williams' petition for certiorari, vacated our opinion in *Williams II*, and remanded the case to this Court "for reconsideration in light of *Sons of Confederate Veterans v. Henry County Bd. of Commissioners*, 315 Ga. 39 (880 SE2d 168) (2022)." Having done so, we conclude that Williams has demonstrated taxpayer standing to pursue his claim of injunctive relief against Thurmond; we therefore reverse the trial court's order finding that Williams did not have taxpayer standing and remand this case to the trial court to properly

consider in the first instance Williams' claim for injunctive relief against Thurmond, including the issue of whether OCGA § 36-5-24 is constitutional. Furthermore, as the Supreme Court's writ of certiorari did not implicate any other part of our opinion in *Williams II*, we hereby reinstate Divisions 2 and 3 of that opinion herein. Accordingly, we affirm the trial court's judgment in part, reverse the judgment in part, vacate the judgment in part, and remand this case for further proceedings.

1. In summary form, and only as is relevant to our decision in this appeal, Williams filed a complaint against Thurmond and the commissioners arguing that the commissioners violated the Open Meetings Act by failing to provide proper notice of their intent to pass a salary ordinance increasing their pay. *Williams v. DeKalb County*, 308 Ga. 265, 268 (1) (840 SE2d 423) (2020) ("*Williams I*"). Included in Williams' multiple causes of action was a claim for injunctive relief against Thurmond to prevent payment of the increased salaries. The trial court dismissed Williams' claim for injunctive relief against Thurmond, concluding that Williams lacked standing as a citizen or taxpayer. Id. at 266, 271-273 (3) (a), (b) (i), (ii). In *Williams I*, our Supreme Court vacated the dismissal of Williams' claim for injunctive relief against Thurmond and remanded the case to the trial court, noting that "[t]he resolution of any claim

that Williams seeks to have decided against Thurmond should not be addressed by the trial court until it is clear that Williams has standing to bring it and is, therefore, a proper plaintiff." Id. at 274 (3) (b) (ii).

On remand, Thurmond moved to dismiss Williams' injunctive relief claim due to a lack of standing and for failure to state a claim. The trial court granted Thurmond's motion, finding that Williams did not have taxpayer standing[2] to pursue injunctive relief against Thurmond because he did not: (1) demonstrate that he suffered any particularized harm (alleging only that he "lost trust and faith that they would be able to follow the law"); (2) show an unlawful expenditure of public funds; or (3) demonstrate an illegal act by Thurmond, as the salary ordinance passed and has not been declared unconstitutional. Williams appealed, and we affirmed, holding that "Williams did not have taxpayer standing because he has not shown any particularized harm." (Citations, punctuation, and footnote omitted.) *Williams II*, 364 Ga. App. at

---

[2] The Supreme Court resolved the question of Williams' lack of citizen standing in *Williams I*, see id. at 271 (3) (a). Whether that conclusion remains valid in view of *Sons of Confederate Veterans* is not for us to say. See OCGA § 9-11-60 (h) ("[A]ny ruling by the Supreme Court . . . in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be.").

717 (1). The Supreme Court granted Williams' petition for certiorari and directed us to reconsider our decision in view of *Sons of Confederate Veterans*.

(a) *Taxpayer standing.* In *Sons of Confederate Veterans*, "various Sons of Confederate Veterans entities" and a Newton County resident filed actions against the Henry County and Newton County boards of commissioners, respectively, to challenge the boards' votes to remove Confederate monuments from public spaces in alleged violation of OCGA § 50-3-1 (b). 315 Ga. at 40, 41 (1) (b). After a thorough examination of the evolution of standing under Georgia law, our Supreme Court noted the historical principle that "taxpayers, as community stakeholders, had standing to sue for injuries that affected the public at large, so long as there was some potential injury to the public purse." Id. at 56 (2) (c) (i); see also *Williams I*, 308 Ga. at 272 (3) (b) (ii); see generally *Savage v. City of Atlanta*, 242 Ga. 671, 671-672 (251 SE2d 268) (1978). Furthermore, the Court held that

> community stakeholders — citizens, residents, voters, and taxpayers — are injured when their local governments do not follow the law. Where a public duty is at stake, a plaintiff's membership in the community provides the necessary standing to bring a cause of action to ensure a local government follows the law.

5

(Footnotes omitted.) *Sons of Confederate Veterans*, 315 Ga. at 61 (2) (c) (iii). As a result, the Court determined that only the Newton County resident, "[b]y alleging that she is a citizen of Newton County," alleged a cognizable injury for which she had standing to pursue injunctive relief. Id. at 65 (2) (d) (i). In contrast, the Court concluded that

> [t]he various Sons of Confederate Veterans groups did not allege that they are citizens, residents, or taxpayers of any county, much less the counties that they sued. They have set forth no allegations showing that they are community stakeholders, such that the duty created by OCGA § 50-3-1 is one that is owed to them. Therefore, any violation of OCGA § 50-3-1 does not result in a cognizable injury to the Sons of Confederate Veterans groups; and, as a result, they do not have independent, direct standing as organizations.

Id. at 66 (2) (d) (ii).

Upon consideration of the Supreme Court's decision in *Sons of Confederate Veterans*, we now conclude that Williams has taxpayer standing to bring his claim for injunctive relief against Thurmond.

On remand following *Williams I*, Williams filed his third amended complaint in which he alleged that Thurmond performed official acts related to the disbursement

6

of salaries to the commissioners, including allegations that Thurmond "controls the disbursement and expenditure of funds once the [salary ordinance] was adopted" and that the "DeKalb County director of finance is not permitted to disburse funds under the salary ordinance . . . without [Thurmond's] approval."

As our Supreme Court has explained, "the question of standing is a jurisdictional issue." (Citation and punctuation omitted.) *Williams I*, 308 Ga. at 271 (3); see also *Sons of Confederate Veterans*, 315 Ga. at 44 (2) (a); *Perdue v. Barron*, 367 Ga. App. 157, 160-161 (1) (885 SE2d 210) (2023); *In re Haney*, 355 Ga. App. 658, 660 (845 SE2d 380) (2020) ("[S]tanding is a threshold issue.") (citation, punctuation, and emphasis omitted). Under Georgia law,

> only plaintiffs with a cognizable injury can bring a suit in Georgia courts. Unlike federal law, however, that injury need not always be individualized; sometimes it can be a generalized grievance shared by community members, especially other residents, taxpayers, voters, or citizens.

*Sons of Confederate Veterans*, 315 Ga. at 39. To that end, "when a local government owes a legal duty to community stakeholders, the violation of that legal duty constitutes an injury that our case law has recognized as conferring standing to those

stakeholders, even if the plaintiff at issue suffered no individualized injury." Id. at 67 (2) (d) (ii).

Applying this rubric, we conclude that Williams' original petition, as well as the Supreme Court's decision in *Williams I*, each demonstrate that he has taxpayer standing. See *Sons of Confederate Veterans*, 315 Ga. at 61 (2) (c) (iii) ("Although the terms 'citizens' and 'residents' are perhaps more precise (or less confusing) in cases involving a public duty, these types of cases reflect that community stakeholders — citizens, residents, voters, and *taxpayers* — are injured when their local governments do not follow the law.") (punctuation and footnote omitted; emphasis supplied), 65 (2) (d) (i) ("By alleging that she is a citizen of Newton County, [the petitioner] has alleged a cognizable injury as a result of Newton County's vote to move a public monument from display, in violation of OCGA § 50-3-1."). Williams' original complaint, and each of his amended complaints, alleged that he "resides in unincorporated DeKalb County." Moreover, our Supreme Court noted in *Williams I* that Williams is a citizen and a taxpayer of DeKalb County. 308 Ga. at 268 (1) (noting Williams "is a citizen and taxpayer of DeKalb County"), 272 (3) (b) (i) (describing Williams "as a citizen of DeKalb County"); see also OCGA § 9-11-60 (h).

8

Finally, Williams' original claim for injunctive relief rested on allegations, if proven true, that Thurmond "controls the disbursement and expenditure of funds" and could be enjoined from issuing increased salaries implemented by a salary ordinance passed in violation of state law. As a result, we conclude that Williams has taxpayer standing based upon the principles stated in *Sons of Confederate Veterans*, and we reverse that portion of the trial court's judgment concluding that Williams does not have taxpayer standing.[3]

(b) *Merits of Williams' claim.* In *Williams I*, our Supreme Court noted that Williams asserted in his second amended complaint that "OCGA § 36-5-24, which delegates the power to county governing authorities to increase their members' pay, is unconstitutional. In the alternative, Williams contends that the commissioners failed to comply with the requirements of OCGA § 36-5-24 when passing the ordinance." (Footnotes omitted.) 308 Ga. at 270 (3).[4] However, the Supreme Court

---

[3] Although now incorrect in view of *Sons of Confederate Veterans*, the trial court's initial finding that Williams "has not put forward any facts that would show the unlawful expenditure of public funds" was phrased in a manner consistent with the Supreme Court's then-prevailing description of taxpayer standing. See *Williams I*, 308 Ga. at 272 (3) (b) (ii).

[4] Williams carried this claim forward in his third amended complaint.

vacated the trial court's order granting Thurmond's motion to dismiss Williams' claim for injunctive relief and remanded the case to the trial court for reconsideration of Williams' standing as a taxpayer, holding that "[t]he resolution of any claim that Williams seeks to have decided against Thurmond should not be addressed by the trial court until it is clear that Williams has standing to bring it and is, therefore, a proper plaintiff." Id. at 274 (3) (b) (ii). As a result, the Supreme Court did not address Williams' argument concerning the constitutionality of OCGA § 36-5-24.[5]

In view of our conclusion in Division 1 (a) that Williams has taxpayer standing to pursue his claim for injunctive relief against Thurmond, we remand this case to allow the trial court to consider properly, in the first instance, Williams' substantive claims concerning the constitutionality of OCGA § 36-5-24.[6] See *Williams I*, 308 Ga.

---

[5] The Supreme Court did note that the trial court "addressed the merits of Williams' claim and held OCGA § 36-5-24 to be constitutional and the actions of the members of the county governing authority to be in conformity with the statute." *Williams I*, 308 Ga. at 271 (3), n. 10. However, the Supreme Court also stated that the trial court's consideration was "improper" in the absence of standing. Id.

[6] But see *Redding v. State*, 313 Ga. 730, 736 (2) (873 SE2d 158) (2022) (concluding that a claim that is "so patently meritless that its denial is certain" would render "remand for consideration of [that] issue . . . a waste of judicial resources") (citation and punctuation omitted); *Henderson v. State*, 247 Ga. App. 31, 32 (2) (543 SE2d 95) (2000) (noting that "remanding the case would be an exercise in futility" where trial court stated, under belief that it had discretion in sentencing a recidivist,

it would not exercise its discretion to suspend portion of sentence).

In that vein, the trial court's conclusion that Williams' cause of action for injunctive relief failed to state a claim, because there can be no claim for injunctive relief "absent a declaratory judgment claim seeking a declaration that a statute is unconstitutional[,]" is belied by the Supreme Court's remand of Williams' injunctive relief claim against Thurmond despite its earlier holding that Williams' claim for declaratory relief was properly dismissed, therefore suggesting that the two remedies are independent. See OCGA § 9-11-60 (h) ("[A]ny ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be."); compare *Sexual Offender Registration Review Bd. v. Berzett*, 301 Ga. 391, 396 (801 SE2d 821) (2017) (holding that "[b]ecause [the petitioner's] cause of action for declaratory judgment should have been dismissed, his request for injunctive relief also should have been dismissed") (footnote omitted).

Furthermore, the question of whether OCGA § 36-5-24 is constitutional, and whether it authorized passage of the salary ordinance, is a separate inquiry from whether the salary ordinance is illegal and unenforceable based upon the DeKalb County Organizational Act. To that end, Section 15 (a) of the DeKalb County Organizational Act provides, in part, that "[t]he Chief Executive shall approve or veto [an] ordinance or resolution within eight business days after its adoption by the Commission, and, *except as hereinafter provided*, no ordinance or resolution shall become effective without the approval of the Chief Executive." (Emphasis supplied.) Ga. L. 1988, p. 4742, § 3. Section 15 (b) states that "[i]f the Chief Executive does not approve or veto an ordinance or resolution within eight business days after its adoption by the Commission, it shall become effective without the Chief Executive's approval." Ga. L. 1981, p. 4322, § 1. It is therefore clear that if the DeKalb CEO does not either approve or veto an ordinance within eight days of its passage, the ordinance becomes effective without the CEO's approval. It is undisputed that Thurmond did not approve the salary ordinance within eight days of its passage. It necessarily follows that the salary ordinance, ostensibly, became effective after the eight-day period during which Thurmond took no action. This is not an unusual procedure, as it simply

at 271 (3), n. 10 (concluding that "if a court determines that a party lacks standing to challenge the constitutionality of a statute, it is improper to address the merits of the constitutional claim").

2. In Division 2 of *Williams II*, we concluded that the trial court, in adjudicating the commissioners' motion for judgment on the pleadings, improperly relied on certain affidavits attached to the commissioners' answer to Williams' third amended complaint, thereby converting the commissioners' motion into a summary judgment motion without notice to the parties of the conversion. 364 Ga. App. at 717-728 (2). In Division 3, we held that the trial court properly refused to consider in camera certain e-mails issued to and from the county attorney and various commissioners between January 19 and 31, 2018. Id. at 728-730 (3). Because the Supreme Court did not disturb Divisions 2 and 3 of *Williams II*, those divisions are reinstated and incorporated herein by reference.

---

mirrors similar provisions in the Georgia Constitution. See Ga. Const. of 1983, Art. III, Sec. V, Par. XIII (a) ("All bills and all resolutions which have been passed by the General Assembly intended to have the effect of law shall become law if the Governor approves or fails to veto the same within six days from the date any such bill or resolution is transmitted to the Governor. . . ."), Art. V, Sec. II, Par. IV ("The Governor may veto, approve, or take no action on any such bill or resolution."). Whether OCGA § 36-5-24 allowed the commissioners to pass the salary ordinance in the first place is the question yet to be addressed.

In sum, we conclude that Williams demonstrated taxpayer standing to challenge Thurmond's enforcement of the salary ordinance. As a result, we reverse that portion of the trial court's order granting Thurmond's motion to dismiss Williams' third amended complaint on the basis that Williams lacked taxpayer standing and remand Williams' claim for injunctive relief against Thurmond, including the issue of whether OCGA § 36-5-24 is constitutional, to the trial court. Finally, as we held in *Williams II*,

> [w]e also affirm the trial court's order rejecting Williams' request to conduct an in camera review of certain e-mails between various commissioners and the county attorney[,] [but] conclude that the trial court erred in considering the affidavits attached to the commissioners' answer to Williams' third amended complaint in reviewing the commissioners' motion for judgment on the pleadings, without properly converting the motion to one for summary judgment. Therefore, we vacate that portion of the trial court's order granting the motion for judgment on the pleadings and remand the case to the trial court for further proceedings consistent with this opinion.

364 Ga. App. at 730 (3). What remains for decision by the trial court, then, is Williams' claim for injunctive relief against Thurmond and the proper consideration

13

of the commissioners' motion for judgment on the pleadings.

*Judgment affirmed in part, reversed in part, and vacated in part, and case remanded. Barnes, P. J., and Brown, J., concur.*